Warren E. Gluck, Esq.
Marie E. Larsen, Esq.
David W. Wirt (*Pro Hac Vice* Pending)
Jessica Magee (*Pro Hac Vice* Pending)
Shardul Desai (*Pro Hac Vice* Pending)
HOLLAND & KNIGHT LLP
31 W. 52nd Street
New York, NY 10019
Telephone: 212-513-3200
Fax: 212-385-9010
Warren.Gluck@hklaw.com
Marie.Larsen@hklaw.com
David.Wirt@hklaw.com
Jessica.Magee@hklaw.com
Sardul.Desai@hklaw.com

*Counsel for the Joint Provisional Liquidators of FTX
Digital Markets Ltd. (in Provisional Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
|  | : | Case No. |
| FTX DIGITAL MARKETS LTD. | : |  |
|  | : |  |
| Debtor in a | : |  |
| Foreign | : |  |
| Proceeding.[1] | : |  |
|  | : |  |
|  | : |  |

------------------------------------------------------------

## DECLARATION OF BRIAN CECIL SIMMS KC IN SUPPORT OF PETITION FOR RECOGNITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

I, Brian Cecil Simms KC, hereby declare under penalty of perjury under the laws of the

United States as follows:

---

[1] FTX Digital Markets LTD. is a company incorporated in the Commonwealth of The Bahamas and operates as a digital assets business under the Digital Assets and Registered Exchanges Act, 2020, with registration number 207269B.

1.       Kevin G. Cambridge, Peter Greaves, and I are the duly joint appointed provisional

liquidators ( "**Joint Provisional Liquidators**") of FTX Digital Markets LTD. ("**FTX Digital**"), a

company incorporated in the Commonwealth of The Bahamas and operating as a digital assets

business under the Digital Assets and Registered Exchanges Act, 2020 (the "**DARE Act**").

2.       FTX Digital is a company within the meaning of the Companies (Winding Up

Amendment) Act, 2011 ("**CWUA Act**") and is in provisional liquidation in the Commonwealth of

The Bahamas (the "**Bahamian Liquidation**") pursuant to a Petition for Winding Up Order

application by the Securities Commission of The Bahamas, and an Order for Appointment of

Provisional Liquidator issued on November 10, 2022 by the Commercial Division of the Supreme

Court of the Commonwealth of The Bahamas (the "**Bahamian Court**"), the sole Court with

jurisdiction over FTX Digital and the entities operated from FTX Digital's substantial office

complex in Nassau, Bahamas.

3.       I respectfully submit this declaration (the "**Declaration**") in support of the Joint

Provisional Liquidators' petition (the "**Petition**") seeking, pursuant to Chapter 15 of the United

States Bankruptcy Code, 11 U.S.C. § 1501, *et seq.* (the "**Bankruptcy Code**"), an Order:

(i) recognizing the Bahamian Liquidation as a foreign main proceeding under 11 U.S.C. §§

1502, 1515, 1517(a) and (b)(1), or in the alternative, as a foreign nonmain proceeding

pursuant to 11 U.S.C. § 1517(b)(2);

(ii) recognizing the Joint Provisional Liquidators as the "foreign representatives" of FTX

Digital pursuant to 11 U.S.C. §§ 101(24) and 1515(a);

(iii) confirming that the Joint Provisional Liquidators have satisfied the requirements of 11

U.S.C. § 1515;

(iv) a stay of all actions against FTX Digital or its property pursuant to 11 U.S.C. § 1520(a)(1) and 1521(a);

(v) an order authorizing discovery measures pursuant to 1521(a)(4); (vi) requiring the turnover of FTX Digital's assets, to the Joint Provisional Liquidators pursuant to 11 U.S.C. §§ 542, 1521(a)(4), (a)(7) and (b);

(vii) an order authorizing the Joint Provisional Liquidators to appear in the state, federal and bankruptcy courts of the United States pursuant to 11 U.S.C. § 1521(a)(7);

(viii) granting additional discovery relief under 11 U.S.C. §§ 1520 and 1521; and

(ix) any other relief the Court finds just and proper.

4.       I have reviewed the Petition, and it is my belief that the relief sought therein is necessary to implement the liquidation described therein.

5.       I also make this Declaration to provide the Court with certain known background information on FTX Digital and the Bahamian Liquidation, and on other relevant events leading up thereto.

6.       I am over the age of 18, and I am duly authorized to make this declaration acting in my capacity as one of the Liquidators of FTX Digital. If called upon to testify, I could and would testify competently as to the facts set forth herein. Except as otherwise indicated, I make this Declaration based on the documents in my possession and supplied to me, on facts and matters that are known to me or of which I have been informed by others, and on my experience and training. When I am informed by others, the information is true to the best of my knowledge and belief, and I state the source of the information.

7.       I am a resident of The Bahamas. I am a Senior Partner of the firm Lennox Paton and the head of the Litigation and Insolvency & Restructuring Groups.

Lennox Paton is a leading, full-service commercial law firm located at 3 Bayside Executive Park, Nassau, N.P., The Bahamas. I have been practicing law for over 30 years. Throughout my career, I have appeared a number of times in the Privy Council. I was made a Queen's Counsel in 2009 (now King's Counsel), and I have overseen some of the most substantial Bahamian and international offshore cases.

8.      Kevin G. Cambridge is the Bahamas Advisory Partner at PricewaterhouseCoopers Advisory (Bahamas) Limited and resides in The Bahamas. He has over 20 years of combined Assurance and Advisory experience, and he focuses primarily on liquidation and forensic services. He has been a court approved liquidator in a number of Bahamian based liquidations including the liquidation of a Bahamas based entity with operations across North and South America in the production of agricultural commodities with revenues of $1 billion. He also served as a Joint Liquidator and liaised with the US Receiver, Securities and Exchange Commission and other regulators on a Bahamas based investment fund alleged to be part of a $130 million fraud by the principals. He also served as a member of the select committee responsible for drafting the CWUA Act in conjunction with the former Attorney General of the Commonwealth of The Bahamas.

9.      Peter Greaves is PricewaterhouseCoopers Limited partner in its Restructuring and Insolvency practice and is based in Hong Kong. He is the firm's restructuring and insolvency leader for the Asia Pacific region and a qualified and licensed insolvency practitioner. He has 30 years of corporate restructuring and insolvency experience and has relevant experience as an appointee in insolvency cases in Hong Kong and the British Virgin Islands. He is regularly involved in insolvency and restructuring matters in other jurisdictions both offshore and onshore.

**I.      Summary of the Bahamian Liquidation and Petition in the United States**

10.    On November 10, 2022, the Securities Commission of The Bahamas (the

"**Commission**") filed a petition ("**The Bahamas Petition**") in the Bahamas Supreme Court for an

Order requiring that FTX Digital be wound up because (1) it was insolvent according to the CWUA

Act, (2) the Commission suspended its license, and (3) it was in breach of its duties under the

DARE Act. A true and correct copy of The Bahamas Petition is attached hereto as **Exhibit 1**.

11.    Also on November 10, 2022, a hearing took place in the Bahamian Court and his

Lordship, the Honourable Mr. Chief Justice Ian Winder, heard the Application of the Commission

and the Affidavit of Christina Rolle, the Commission's Executive Director.    Upon due

consideration, Lord Winder issued an order directing FTX Digital be placed into provisional

liquidation and he appointed me Provisional Liquidator of FTX Digital (the "**Provisional

Liquidation Order**").   A true and correct copy of the Provisional Liquidator Order is attached

hereto as **Exhibit 2.**

12.    The Provisional Liquidation Order divests FTX Digital's directors' of the ability to

act, or exercise any functions, for or on behalf of FTX Digital unless expressly instructed to so by

me in writing.

13.    The Provisional Liquidation Order directs, authorizes and empowers me to take all

and any necessary steps I consider fit to protect the assets of FTX Digital wherever situated,

including any assets held in trust by FTX Digital, including the filing of this Chapter 15 Petition

and the Provisional Relief Application for the purposes of protecting and collecting the assets of

FTX Digital.

14.    On November 11, 2022, FTX Trading Ltd. ("**FTX Trading**")[2] and 134 other

affiliates and subsidiaries ("**FTX Affiliates**"), purported to file a Chapter 11 Voluntary Petition for

---

[2] FTX Trading is a company incorporated in Antigua and Barbuda.

Non-Individuals for Bankruptcy in the United States Bankruptcy Court for the District of Delaware, case number 22-11068 (the "**Delaware Petition**").

15. Notably, FTX Digital is not part of the Delaware Petition. As of the date of the Delaware Petition, no person other than me, as Provisional Liquidator, was authorized to take any act including, but not limited to, filing the Delaware Petition, in connection with FTX Digital and FTX Digital's subsidiaries to the extent the authority of FTX Digital's directors and management was requisite. I did not authorize or approve -- in writing or otherwise -- any of FTX Digital's officers, management or employees to file, or cause to be filed, the Delaware Petition. Based upon my years of experience practicing law in the Bahamas and information that has been provided to me by *inter alia* the Securities Commission of The Bahamas , and pending further analysis, I reject the validity of any purported attempt to place FTX Affiliates in bankruptcy insofar as such filing required FTX Digital's officers, directors, or management to approve and authorize such action.

16. On November 14, 2022, the Bahamian Court appointed both Mr. Cambridge and Mr. Greaves to serve alongside me as Joint Provisional Liquidators of FTX Digital, and extended to them all the rights, responsibilities and authority granted to me by the Provisional Liquidation Order.

17. As set forth below, the Joint Provisional Liquidators' findings to date indicate that serious fraud and mismanagement may have been committed with respect to FTX Digital and the FTX Affiliates.

## II.    **FACTUAL BACKGROUND**

### **Digital Assets Generally**

18. Digital assets generally include cryptocurrency such as Bitcoin (BTC) and are generally regarded as property and are transacted on digital ledgers known as a blockchain. They

have unique features but those features can, depending on their design, include attributes of bearer instruments, attributes of dematerialized securities traded in the capital markets and attributes of cash (fiat currency). Control over those sorts of digital assets is at base dependent upon control over the relevant "private key" (akin to a password or PIN). To the extent that a person has control over the relevant private key (a unique alpha-numeric code), that person can conduct final, irreversible, immutable, and absolute transactions of the digital assets secured by that private key.

19.     Cryptocurrencies are often said to be stored in "wallets" although the phrase "wallet" has a wide range of meanings: from a USB stick on which the "private key" is stored (commonly called a "cold wallet"), to software ("wallet software") on a device connected to the internet which stores the private key behind various levels of security (commonly called a "hot wallet"), to an online account on the platform of an exchange or other crypto-market service provider that simply records the amount of cryptocurrency that a customer of that exchange or service provider has transferred to that exchange or service provider on an internal ledger maintained by the exchange which is entirely external to the relevant blockchain. In these circumstances, customers can conduct transactions only by interacting (making requests) to the exchange itself pursuant to whatever functionality the exchange's platform provides and subject to any binding terms and conditions between the customer and the exchange. The customer does not have direct control over the cryptocurrency transferred to the exchange.

20.     In this last situation, the exchange itself may hold the private key (or keys) to the cryptocurrency transferred to it by customers in a "cold wallet" or a "hot wallet", or a combination of the two (i.e. some of the cryptocurrency being held on a private key kept in a "cold wallet" but some of it held on a different private key kept in a "hot wallet").

21.     Cryptocurrency exchanges often hold cryptocurrency transferred to the exchange

by more than one customer on a single private key (or a small number of private keys), rather than the cryptocurrency transferred by each customer being held on a separate private key. In this way, an exchange's digital currencies might be thought of as being held on a "pooled" basis or in an "omnibus" account (or a small number of "omnibus" accounts); certainly in this situation there is no segregation.

22.    Alternatively, an exchange might provide customers with the ability themselves to hold the private key to the cryptocurrency (sometimes called a "self-custodial wallet").

23.    A digital asset exchange allows customers to convert fiat currency to digital assets, to store digital assets within wallets provided by the exchange, and to exchange between one or more forms of digital assets.

24.    Commercial exchanges often store their customers' digital assets in pooled wallets, wherein the customer does not have control over the pooled wallet's private key; rather, the customer's assets are recorded on internal ledgers of the exchange, which are external to the blockchain. In these circumstances, customers can conduct transactions only via requests to the commercial exchange.

25.    Cryptocurrency exchanges also sometimes offer customers the opportunity to enter into derivative contracts referencing cryptocurrency in some way (e.g. options, forwards, volatility-based derivatives). Sometimes the counterparty to those contracts is the exchange operator itself, and sometimes it is an affiliate of the exchange operator.

## A.    **FTX Digital**

26.    FTX's digital asset exchange was founded in May 2019 by Samuel Bankman-Fried ("**SBF**") in Hong Kong, and it (and SBF) relocated to Nassau, Bahamas in September 2021.

27.    This digital asset exchange was incorporated as FTX Digital in the Commonwealth

of The Bahamas on July 22, 2021 as an International Business Company.

28.    The registered number of FTX Digital in The Bahamas is No. 207269B. The
principal address and office for FTX Digital is Building 27, Veridian Corporate Centre West Bay
Street, Nassau, N.P.

29.    FTX Digital is registered as a digital asset business under the DARE Act.  Under
the DARE Act, FTX Digital is registered to provide, *inter alia*, (i) an exchange between digital
assets and fiat currency and (ii) an exchange between one or more forms of digital assets.

30.    FTX Digital operated a digital asset exchange, which offered functionality similar
to traditional brokerage accounts, providing the functionality set out in paragraph 11, *supra*.
Digital asset exchanges typically generate revenue by collecting a fee for each trade they facilitate,
but many also engage in trading (or other commercial use of) cryptocurrency that is transferred to
them by customers.

31.    The FTX platform also appears to have offered customers the ability to take various
leveraged or derivative positions, such as margin trading (loans), futures, options, and volatility
products, as well as the ability for one customer to buy or sell directly from another — serving
customers outside of the United States, Japan, Bahamas, Australia, and Singapore.

32.    In addition, the owners and operators of FTX Digital created their own digital asset
called the FTX Token ("**FTT**").  This token allowed FTX Digital users to obtain discounts on
trading fees, collateralize their futures positions, and benefit from other exchange-centric uses.

**B.    Structure and Operation of FTX Located in The Bahamas**

33.    SBF was the founder and controlling owner of the FTX network of companies that
established the FTX Brand (the "**FTX Brand**"), and which were managed and operated by FTX
Digital in The Bahamas.  The FTX Brand includes Alameda Research Ltd. ("**Alameda**"), a

quantitative digital asset trading firm also founded by SBF. Alameda is a wholly owned subsidiary

of holding company Alameda Research LLC which, upon information and belief, is wholly owned

by SBF.

34.     In addition, SBF is the 100% owner of Paper Bird Inc., which is the 75% owner of

FTX Trading. Both Paper Bird Inc. and FTX Trading are holding companies.

35.     FTX Trading is the sole 100% owner of FTX Digital, FTX Hong Kong, FTX Japan

Holding K.K., FTX (Gibraltar) Ltd., FTX Canada Inc. FTX Europe AG, FTX Digital Holding

(Singapore) Pte. Ltd., and many other entities.

36.     SBF is the majority owner of West Realm Shires, Inc. d/b/a FTX US.   For

regulatory purposes, FTX US provided, within the United States, subset of services offered by

FTX Digital.

37.     Despite the seemingly complex structure of the FTX Brand companies, the entire

FTX Brand was ultimately operated from a single location: The Bahamas.  All core management

personnel likewise were located in The Bahamas.

38.     On September 20, 2021, SBF tweeted that "FTX has been registered with the

Securities Commission of the Bahamas under the DARE Act of 2020," and that it would be

"building out our headquarters here in the Bahamas."  Four days later, SBF reemphasized the

relocation by tagging the official FTX twitter account and stating "[w]e're really excited to be

setting up @FTX_Official's headquarters in the Bahamas!"

39.     In October of 2022, The Bahamas Tribune reported that the headquarters would be

located on a "4.95 acre site, located between Bayside Executive Park's existing buildings and the

Orange Hill Beach Inn, will feature two boutique hotel buildings covering a total 77,000 gross

square feet and spanning seven levels, with parking area 51,000 gross square feet in size.

Residential and office spaces, also spread over seven levels, will cover 116,000 gross square feet and be accompanied by a 205,000 square feet parking area." Additionally, it stated that "[o]ther planned facilities include an athletic and wellness area; a theatre; auditorium; conference centre; café/restaurant; retail; a daycare centre; and 'vertical farm'."[3]

40.    The Bahamas Tribune further reported that eventually "a total of 700 employees will work at the office building, of which 38 are expected to be housed in the boutique hotel and condo hotel. The remaining 662 employees are expected to live off-campus and commute to work. Large events will also be held at the conference centre and auditorium on a quarterly basis, which are expected to draw up to 800 additional guests to the site. The campus is expected to be fully built-out by 2025." Further, "[t]he proposed development will include a total of 612 parking spaces: Twenty-five spaces for the hotel, 75 spaces for the condo hotel and the remaining 512 spaces for the office/convention buildings."

41.    The Bahamas Tribune stated that the campus headquarters would cost about $60 million, and it published the proposed site plans submitted to the Department of Physical Planning.[4]

42.    While this campus development was underway, FTX Digital employees worked from nearby offices. In the ordinary course of our work as the Joint Provisional Liquidators, we have recovered books and records of FTX Digital at these offices.

43.    SBF has resided in The Bahamas since 2021 and has confirmed that he operated the entirety of the FTX Brand in and from The Bahamas. In addition, the power to transfer the digital assets held by the FTX exchanges is centralized in The Bahamas, and the possessory,

---

[3] http://www.tribune242.com/news/2022/oct/19/ftx-hire-more-100-bahamians-crypto-work.

[4] The Bahamas Tribune report with the site plans can be found at the following link:
http://www.tribune242.com/photos/2022/mar/14/75794/.

custodial, control and equitable property interests in all FTX Brand property is believed to be
maintained in The Bahamas.

### C.    Alleged Mismanagement of FTX Digital by SBF and FTX Insolvency

44.    Reputable news agencies have provided detailed coverage of the alleged fraud and
mismanagement of FTX Digital.

45.    In May and June of 2022, according to news reports, Alameda suffered severe
losses from a number of deals it was engaged in, including a $500 million loan that defaulted.[5]
New York Times reporting contends that SBF was heavily involved in the decision-making for all
of Alameda's "big trades."[6]

46.    On or about November 2, 2022, Alameda's balance sheet was leaked on the
Internet. This balance sheet showed that much of the company's $14.6 billion in assets were held
in FTT, the digital asset created by the FTX Brand and used for benefits on its platform.[7]

47.    On November 6, 2022, Binance Holdings Ltd's ("Binance") CEO tweeted that "[a]s
part of Binance's exit from FTX equity last year, Binance received roughly $2.1 billion USD
equivalent in cash (BUD and FTT). Due to recent *revelations* that have came [sic] to light, we
have decided to liquidate any remaining FTT on our books." The impact of the announcement
was swift; in 24 hours, more than $5 billion of withdrawal requests were made on the various FTX
Brand's exchange platforms.

48.    Also on November 6, 2022, SBF seemingly responded by tweeting "a bunch of

---

[5] https://www.reuters.com/technology/exclusive-behind-ftxs-fall-battling-billionaires-failed-bid-save-crypto-2022-11-10/.

[6] https://www.nytimes.com/2022/11/11/business/ftx-bankruptcy.html; https://fortune.com/2022/11/11/sam-bankman-fried-crypto-empire-ftx-alameda-run-gang-kids-bahamas-who-all-dated-each-other/.

[7] https://www.wsj.com/articles/binance-is-said-to-be-likely-to-walk-away-from-deal-to-buy-ftx-11668020963; https://www.reuters.com/technology/exclusive-behind-ftxs-fall-battling-billionaires-failed-bid-save-crypto-2022-11-10/.

unfounded rumors have been circulating. FTX keeps audited financials etc. And, though it slows
us down sometimes on product, we're highly regulated." SBF further explained that FTX Digital
"has enough to cover all client holdings. We don't invest client assets (even in treasuries). We
have been processing all withdrawals, and will continue to be." SBF later deleted this tweet.

49.    At or around this time, the Wall Street Journal reported that the FTX Brand's
management misused customer deposits on the FTX digital asset exchange to extend undisclosed
loans to Alameda.    Essentially, the allegation is that FTX Brand management misused
cryptocurrency that had been credited to customers' accounts on the FTX cryptocurrency exchange
to extend undisclosed loans to Alameda. According to the report, one observer indicated that
Alameda used this cryptocurrency exchange to extend undisclosed loans to Alameda. Allegedly,
FTX had $16 billion in crypto assets at that time; thus, more than half of the amounts standing to
the credit of customer accounts on the FTX cryptocurrency exchange were misappropriated to
finance Alameda's unsuccessful trades.[8]

50.    On November 8, 2022, SBF tweeted that "[i]n the last 72 hours, we've had roughly
$6b of net withdrawals from FTX," that withdrawals at FTX.com are "effectively paused," and
that the pause in withdrawals would be resolved in "the near future."

51.    That same day, the Binance CEO announced on Twitter that FTX approached
him for help due to a "significant liquidity crunch." The two parties signed a non-binding LOI,
intending for Binance to acquire FTX.com and to help with the liquidity crunch.

52.    In a series of tweets thereafter, SBF confirmed the potential acquisition and stated
that "FTX.us and Binance.us—two separate companies—are not currently impacted by this.
FTX.US's withdrawals are and have been live, is fully backed 1:1, and operating normally."

---

[8] https://www.wsj.com/articles/ftx-tapped-into-customer-accounts-to-fund-risky-bets-setting-up-its-downfall-11668093732.

53.     On November 9, 2022, Reuters reported that SBF issued an admission of wrongdoing and an apology to all FTX employees via internal messaging application Slack that stated: "I'm deeply sorry that we got into this place, and for my role in it. That's on me, and me alone, and it sucks, and I'm sorry, not that it makes it any better."[9]

54.     On November 9, 2022, Binance tweeted that it backed out of the deal due to "mishandled customer funds and alleged US agency investigations." That same day, the Wall Street Journal reported that Alameda CEO Caroline Ellison—joined by SBF and two other members of FTX Digital's management team (Nishad Singh, Director of Engineering, and Gary Wang, Co-Founder & Chief Technology Officer)—told Alameda employees that they were aware of the decision to send customer funds to Alameda. Specifically, according to the report, Ms. Ellison stated that "FTX used customer money to help Alameda meet its liabilities.[10]

55.     The next day, SBF tweeted another admission and apology, stating "I'm sorry. That's the biggest thing. I fucked up, and should have done better." He further explained that only "FTX International, the Non-US Exchange" was in trouble, but FTX US users were fine. In fact, he stated that FTX US is "100% liquid" and "was not impacted by the shitshow." "FTX International, the Non-US Exchange" is shorthand for FTX Digital.

56.     SBF sent a series of additional tweets. Essentially, SBF stated that "FTX International currently has a total market value of assets/collateral higher than client deposits," but such assets were illiquid. He then admitted that "as a very high level, I fucked up twice." "The first time, a poor internal labeling of bank-related accounts meant that I was substantially off on my sense of users' margin." SBF claimed that he thought the user's available leverage was zero

---

[9] https://www.reuters.com/markets/currencies/ftx-turmoil-causes-crypto-concern-sending-token-prices-sliding-2022-11-09.

[10] https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238.

when in reality it was 1.7x. Second, SBF admitted that he believed the company was ready to deliver 24 times the daily withdrawal amounts; however, in reality, it only had 0.8 times that amount. Consequently, on November 6, the company had insufficient liquidity to cover withdrawals, which amounted to about $5 billion.[11]

57.    On November 10, 2022 the Commission froze the assets of FTX Digital and commenced regulatory proceedings.

58.    On November 11, 2022, SBF tweeted that he "filed FTX, FTX US, and Alameda for voluntary Chapter 11 proceedings in the US." He again apologized for "end[ing] up here" and states that he "is piecing together all of the details, but [he] was shocked to see thing unravel the way they did earlier this week."

59.    Once again, as the sole Provisional Liquidator at the time, I did not authorize the Chapter 11 filings and reject the validity of such filings to the extent that such filings required the authorization and consent of FTX Digital Officers and Management. Additionally, none of the Joint Provisional Liquidators have authorized the Chapter 11 filings since the appointment of the Joint Provisional Liquidators.

60.    As a result of the events and admissions summarized above, it is believed the vast majority of International (non-US) account holders with accounts on the FTX cryptocurrency exchange showing credits of cryptocurrency are creditors of FTX Digital. In addition, there are other creditors including investors of FTX Digital. FTX Digital is presently cash flow insolvent and is likely to be balance sheet insolvent.

61.    Presently, FTX Digital has an interest in funds in the amount of $15,000, deposited with Holland & Knight LLP ("**H&K**") and held by H&K in a non-interest bearing client trust

---

[11] https://www.wsj.com/articles/ftx-tapped-into-customer-accounts-to-fund-risky-bets-setting-up-its-downfall-11668093732.

account located in New York, New York.

## III.    THE PROGRESS OF THE BAHAMIAN LIQUIDATION

62.    Since my appointment, I have engaged counsel and professional advisors in The Bahamas and the United States. I have authorized certain limited functions of FTX Digital's directors and management. I have been working to gather FTX Digital's books and records and have obtained access to the FTX Digital office space. I have collected or am in the process of collecting FTX Digital assets.

63.    Moreover, in the ordinary course of work as the Joint Provisional Liquidators, we have learned that FTX Digital was headquartered in The Bahamas, that SBF effectively controlled and owned FTX Digital, that SBF resided in The Bahamas, that the power to transfer the digital assets held by the FTX exchanges is centralized in The Bahamas, that the operations of all FTX Brand entities operated out of The Bahamas through FTX Digital, and that the possessory, custodial, control and equitable property interests in all FTX Digital property is maintained in The Bahamas.

## IV.    DISCOVERY REQUESTED WILL ASSIST THE BAHAMIAN LIQUIDATION

64.    I am informed by counsel that chapter 15 of the Bankruptcy Code includes provisions granting broad discovery rights to the foreign representative(s) upon recognition.

65.    For the following reasons, those discovery rights are critical to the orderly and effective liquidation of FTX Digital for the benefit of all creditors and stakeholders, as the primary assets and business practices of FTX Digital, FTX Brand, among others, remain under investigation.

66.    At the most basic level, the Joint Provisional Liquidators are presently unable to ascertain FTX Digital's financial position, its assets and liabilities more generally, and does not have the totality of the information necessary to protect FTX Digital's assets.

67.    Most importantly, digital assets can be readily exchanged for digital currencies and to others on the underlying blockchains throughout the United States and elsewhere, and these digital assets can be converted to fiat currency and deposited into bank accounts or other fiat-based financial accounts.    Additionally, funds deposited into bank accounts could be dissipated through wire transfers.    Thus, the requested discovery in the Petition is essential because the Joint Provisional Liquidators cannot accurately trace assets and re-create the flow of FTX Digital assets without the ability to issue subpoenas.    This may include the need to access information concerning digital asset accounts maintained by exchanges and/or fund transfers maintained by correspondent or intermediary banks.

68.    Also, as noted above, FTX cryptocurrencies were used by Alameda.    Thus, the Joint Provisional Liquidators will need to conduct discovery to determine whether FTX Digital holds claims against its affiliates based on intercompany transfers and to assess insider transactions.

69.    United States records of FTX Digital and the FTX Brand are likely to be of critical importance to the Bahamian Liquidation for multiple reasons.    For example, these documents could provide a clear picture of the reasons for the insolvency of FTX Digital, and allow the Joint Provisional Liquidators to make an informed judgment as to the potential third party claims available to FTX Digital, and to determine if FTX Digital holds additional, undisclosed assets.

70.    The books and records will provide valuable insight into the financial machinations that led to the alleged dissipation of FTX Digital assets, at the expense of creditors.    The discovery

of these agreements and other financial documents will likely provide further insight into the financial engineering, which appears to have contributed to the insolvency of FTX Digital.

## V.    SECTION 1515(c) STATEMENT

71.    I am informed by counsel that section 1515(c) of the Bankruptcy Code provides that *"[a] petition for recognition shall be accompanied by a statement identifying all foreign proceedings with respect to that debtor that are known to the foreign representative."*

72.    In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that, to my knowledge, the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to FTX Digital is the Bahamian Liquidation.

## VI.    LIST PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

73.    I am informed by counsel that Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that a foreign representative filing a petition for recognition under chapter 15 of the Bankruptcy Code shall file with the petition:

> (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the name and address of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought under § 1519 of the Code.

In accordance with Bankruptcy Rules 1007(a)(4) and Rule 7007.1, I hereby provide the following information:

74.    As of November 10, I understand that the following corporations own 10% or more of any class of FTX Digital's equity interest: FTX Trading.

75.    The Joint Provisional Liquidators are the duly appointed joint provisional liquidators of FTX Digital authorized to administer the Bahamian Liquidation.   The Joint Provisional Liquidators' address is 3 Bayside Executive Park, Nassau, N.P., The Bahamas.

76.     To the best of my knowledge, FTX Digital is not presently a party to any other litigation in the United States.

77.     At present, FTX Digital seeks the following forms of provisional relief pending recognition of the FTX Digital liquidation pursuant to 11 U.S.C. 1501 et seq:

      a.  pursuant to 11 U.S.C. 1519(a)(1), an order staying execution against FTX Digital's assets pursuant to 11 U.S.C. 1520(a);

      b.  pursuant to 11 U.S.C. 1519(a)(2) an order entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative;

      c.  pursuant to 1519(a)(3) an order authorizing urgent discovery measures pursuant to 11 U.S.C. 1521(a)(4);

      d.  pursuant to 1519(a)(3) an order suspending the right to transfer, encumber or otherwise dispose of any assets of FTX Digital to the extent that the extent this right has not been suspended under 11 U.S.C. 1520(a); and

      e.  pursuant to 1519(a)(3) and 1521(a)(7) an order authorizing the Joint Provisional Liquidators to appear in the state, federal and bankruptcy courts of the United States.

78.     Notice will be provided to any persons or entities that are made the subject of the requested provisional discovery via subpoena and the requested relief shall be without prejudice to such discovery targets' rights to challenge the generalized grant of discovery or the particularized discovery issued.

79.     It is conceivable that the FTX Affiliates that filed Chapter 11 will be "impacted" by the provisional relief sought herein and therefore the FTX Affiliates are listed herein and therefore

will be noticed, however I do not believe that the provisional relief sought herein is "against" the

FTX Affiliates and no provisional relief seeking the injunction or dismissal of the Chapter 11 is

presently sought.

[remainder of page intentionally left blank]

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 15, 2022
Executed in Nassau, The Bahamas

**BRIAN CECIL SIMMS KC**

*Joint Provisional Liquidator of FTX Digital Markets LTD.*