# EXHIBIT 1



**Consultation Paper:**

## DIGITAL ASSETS AND REGISTERED EXCHANGES BILL, 2020

The Securities Commission of The Bahamas (the Commission), in its capacity as the regulator of investment funds, securities and the capital markets, has issued the Digital Assets and Registered Exchanges Bill, 2020 (the Bill) for public consultation. The Bill may be found on the Commission's website at: https://www.scb.gov.bs/legislative-framework/consultation-documents/.

An earlier draft and substantial draft of the Bill was previously issued for consultation for the period 3 April 2019 to 28 May 2019. Subsequent to a review of the comments received after the last consultation period and other market as well as regulatory developments, the Digital Assets and Registered Exchanges Bill, 2020 is now being issued for final comments before its submission to the Minister.

**Summary of Revisions**

Key revisions were made to the Bill to ensure that digital assets and digital asset service providers are subject to the same set of KYC and due diligence obligations as other financial institutions and Designated Non-Financial Business and Professionals; in accordance with FATF Recommendation 15. The Bill was also revised to ensure a regulatory focus on the persons providing digital assets services, rather than the underlying technology.  Also, in keeping with FATF Recommendation 15, the revised Bill does not seek to capture closed-loop items that are non-transferable, non-exchangeable, and non-fungible, such as airline miles, credit card awards or other loyalty program rewards that cannot be sold onward in a secondary market.

**Consultation Period**

The consultation period for the commences Wednesday 14 October 2020 and ends Tuesday 20 October 2020, during which time the Commission invites the public to share comments with regard to the Bill. Comments received within this period will be taken into account.

**Comments and Responses**

Comments may be submitted via email to siaconsultation@scb.gov.bs. Alternatively, comments may be submitted to:

The Executive Director
Securities Commission of The Bahamas
Poinciana House, North Building
31A East Bay Street
Nassau, The Bahamas
Tel: (242) 397-4100
Fax: (242) 356-7330
Email: info@scb.gov.bs

**Issued: 14 October 2020**

# DIGITAL ASSETS AND REGISTERED EXCHANGES BILL, 2020

## Arrangement of Sections

**Section**

### PART I – PRELIMINARY      4

1. Short title and commencement................................................................4
2. Interpretation........................................................................................4
3. Application of Act...................................................................................9

### PART II – ADMINISTRATION OF ACT      10

4. Securities Commission to administer Act...........................................10
5. Functions and powers of Commission................................................10

### PART III – REGISTRATION AND  REGULATION OF DIGITAL ASSET BUSINESSES      11

DIGITAL ASSETS BUSINESSES      11

6. Forms of digital asset businesses.......................................................11
7. Prohibition to carry on unregistered digital asset business...............11
8. Registration of a digital asset business.............................................11
9. Digital asset business as additional activity......................................13
10. Duty to notify changes relating to application for registration..........14
11. Financial requirements of digital asset businesses...........................14
12. Commission to maintain Register of digital asset businesses............14
13. Commission's prior approval for certain changes..............................15

ADDITIONAL REQUIREMENTS FOR DIGITAL TOKEN EXCHANGES      15

14. Prohibition to operate unregistered digital token exchange...............15
15. Application for registration of digital token exchange......................15
16. Approval or refusal of application......................................................15
17. Adequate systems and controls for digital token exchanges.............16
18. Digital exchange to satisfy ongoing requirements............................16

SUSPENSION, REVOCATION OR SURRENDER OF REGISTRATION      17

19. Suspension or revocation of registration............................................17
20. Surrender of registration.....................................................................18
21. Process following surrender or revocation.........................................19
22. Winding up or dissolution....................................................................19

DATA PROTECTION      19

23. Record keeping and prevention of unauthorized data access.............19

CONDUCT AND COMPLIANCE                                                    20

24.    Duty to maintain professional conduct.................................................20
25.    General duty to comply and co-operate.................................................20
AML AND CFT PREVENTION MEASURES                              21

26.    Prevention of money laundering and terrorism financing...................21

## PART IV - INITIAL TOKEN OFFERING                          21

27.    Initial token offerings....................................................................21
28.    The offering memorandum.................................................................21
29.    Offer period...................................................................................22
30.    Classification of tokens....................................................................22
31.    Registration of initial token offering..................................................23
32.    Approval of application....................................................................23
33.    Advertisement of initial token offering..............................................23
34.    Powers of Commission in connection with initial token offering.......23
35.    Token register.................................................................................24
36.    Continuing obligations of an issuer to disclose...................................24
PURCHASERS' RIGHTS                                                        24

37.    Purchaser's right to rescission or damages.........................................24
38.    Purchaser's right of withdrawal.........................................................25

## PART V – INVESTIGATION AND COOPERATION               25

39.    Power to inspect and investigate........................................................25
40.    Agents to conduct inspections and investigations...............................25
41.    Co-operative power.........................................................................26

## PART VI – OFFENCES, PENALTIES AND SANCTIONS        29
OFFENCES AND PENALTIES                                                    29

42.    Offence..........................................................................................30
43.    Liability of officer, director, etc.........................................................30
44.    General penalty...............................................................................30
45.    Misrepresentations..........................................................................30
SANCTIONS                                                                          31

46.    Administrative sanction....................................................................31

## PART VII – MISCELLANEOUS                                   32

47.    Appeals..........................................................................................32
48.    Administrative proceedings and reviews. ...........................................33
49.    Fees...............................................................................................33
50.    Rules..............................................................................................33
51.    Regulations....................................................................................34
52.    Guidelines......................................................................................34
53.    Consequential amendments...............................................................34

54.    Transitional.......................................................................................................35

**FIRST SCHEDULE**    **36**

**SECOND SCHEDULE**    **61**

**THIRD SCHEDULE**    **67**

**FOURTH SCHEDULE**    **69**

**FIFTH SCHEDULE**    **70**

Digital Assets and Registered Exchanges Bill, 2020



# DIGITAL ASSETS AND REGISTERED EXCHANGES BILL, 2020

### A BILL FOR AN ACT TO REGULATE THE ISSUANCE, SALE AND TRADE OF DIGITAL ASSETS IN OR FROM WITHIN THE BAHAMAS

### Enacted by the Parliament of The Bahamas

## PART I – PRELIMINARY

**1.   Short title and commencement.**

(1)   This Act may be cited as the Digital Assets and Registered Exchanges Act, 2020.

(2)   This Act shall come into operation on such date as the Minister may appoint by notice published in the *Gazette*.

**2.   Interpretation.**

(1)   In this Act —

"**accredited investor**" shall have the same meaning as in regulation 2 of The Securities Industry Regulations, 2012 *(S.I. No. 1 of 2012)*;

"**asset**" means movable and immovable property of any kind;

"**asset token**" means a digital asset that represents a claim against the issuer that —

(a)   is intended to represent an asset and is embedded with underlying assets; or

(b)   derives its value by reference to an underlying asset; or

(c)   is secured by an underlying asset; or

Digital Assets and Registered Exchanges Bill, 2020

(d)   is backed by assets held as collateral for the primary purpose of encouraging price stability;

"**The Bahamas Institute of Chartered Accountants**" means the Institute continued under section 3 of The Bahamas Institute of Chartered Accounts Act, 2015 *(No. 3 of 2015)*;

"**Bar Association**" refers to the Bar Association identified in section 3 of the Legal Profession Act *(Ch. 64)*;

"**beneficial owner**" has the same meaning assigned to it as in section 2 of the Proceeds of Crime Act, 2018 *(No. 4 of 2018)*;

"**blockchain**" means a digital distributed-ledger or database of transactions relating to digital assets which are recorded chronologically and capable of being audited;

"**compliance officer**" means a person appointed by a licensee and approved by the Commission as a compliance officer, and includes a person to whom compliance functions and obligations have been outsourced;

"**counsel and attorney**" has the same meaning assigned to it under section 2 of the Legal Profession Act *(Ch. 64)*;

"**digital asset**" means a digital representation of value distributed through a DLT Platform where value is embedded or in which there is a contractual right of use and includes without limitation digital tokens;

"**digital asset business**" has the meaning assigned to it as in section 7;

"**digital asset services provider**" means a person that —

(a)   under an agreement as part of its business —

(i)   can undertake a digital asset transaction on behalf of another person; or

(ii)   has power of attorney over another person's digital asset; or

(b)   operates as a market maker for digital assets;

"**digital token exchange**" or "**exchange**" means a marketplace in the form of a platform using distributed ledger technology for the sale, trade or exchange of digital tokens whether for fiat currency or one or more digital tokens;

"**digital token**" or "**token**" includes a —

(a)   virtual currency token;

(b)   asset token;

(c)   utility token;

(d)   non-fungible token; and

(e)     any other digital representation of value designated by the Commission to be a digital token for the purposes of this Act;

"**Distributed Ledger Technology** or "**DLT**" means a digital public or private ledger in which data is recorded, shared and confirmed by consensus and synchronized across a network of multiple nodes which includes the DLT platform formally known as blockchain;

"**DLT platform**" means an online mechanism for the sale, trade or exchange of digital assets offered by a digital asset service provider to its clients;

"**fiat currency**" means coin and money of a jurisdiction that is designated by the government of that jurisdiction as legal tender;

"**founder**" means any person who beneficially owns or is entitled to a significant interest in the issuer or organizer;

"**identified risk framework**" has the same meaning assigned to under section 2 of the Proceeds of Crime Act, 2018 *(No. 4 of 2018)*;

"**initial token offering**" or "**ITO**" means an offer by an issuer to the public for the sale of a digital token in exchange for fiat currency or another digital asset;

"**issuer**" means the entity contractually responsible for issuing the digital token;

"**legal entity**" means an entity incorporated, registered, continued or otherwise established in accordance with —

(a)     the Companies Act *(Ch. 308)*;

(b)     the International Business Companies Act *(Ch. 309)*;

(c)     the Partnership Act *(Ch. 310)*;

(d)     the Partnership Limited Liability Act *(Ch. 311)*; and

(e)     the Exempted Limited Partnership Act *(Ch. 312)*;

"**money laundering reporting officer**" or "**MLRO**" means the person appointed by a licensee and approved by the Commission as the Money Laundering Reporting Officer having responsibility for receiving and making reports concerning suspicious financial transactions);

"**non-fungible token**" means a unique digital token created for use in specific applications which cannot be divided and is not interchangeable with any other type of digital token and cannot be sold in a secondary market;

"**offering memorandum**" means a document, whether a notice, circular, advertisement, or whitepaper issued to the public or accessible electronically inviting applications or offers to subscribe for or purchase digital assets or offering digital assets for subscription or purchase;

Digital Assets and Registered Exchanges Bill, 2020

"**organizer**" if different than the issuer, means a person who, acting alone or in conjunction with one or more other persons, procures the organization and formation of an issuer and the promotion and issuance of digital assets through an issuer;

"**person**" includes a natural person, company, partnership, trust, association and any other legal entity, whether corporate or incorporate;

"**regulatory decision**" means a decision taken by a Supervisory Authority or its recognised international equivalent, to impose a sanction, suspension, ban or other penalty as a result of misconduct, non-compliance with or breach of any supervisory law;

"**securities**" has the same meaning assigned to it in section 2 of the Securities Industry Act, 2011 *(No. 10 of 2011)*;

"**Securities Commission**" or "**Commission**" means the Securities Commission of The Bahamas continued under section 10 of the Securities Industry Act;

"**Securities Industry Act**" means the Securities Industry Act, 2011 *(No. 10 of 2011)*;

"**Securities Industry Regulations**" means the Security Industries Regulations, 2012 *(S.I. No.50 of 2012)*;

"**significant interest**" means beneficial interests cumulatively representing more than ten percent of the issued and outstanding equity interests of the organizer or issuer;

"**smart contract**" means a form of technology arrangement consisting of a computer protocol or an agreement concluded wholly or partly in an electronic form, which is automatable and enforceable by computer code, though some parts may require human input and control and which may be enforceable by ordinary legal methods or by a mixture of both;

"**transfer**" means to conduct a transaction on behalf of another person that moves a digital asset from one digital asset address or account to another;

"**Supervisory Authority**" has the same meaning assigned to it in section 2 of the Financial Transactions Reporting Act, 2018 *(No. 5 of 2018)*;

"**token holder**" means any entity or natural person who purchases, subscribes for or acquires a digital asset;

"**utility token**" means a right of access or a discount represented in binary format to an application, utility or service but which does not, directly or indirectly, provide the holders thereof with any of the following contractual or legal rights —

(a)   ownership or equity interest in the issuer or in any person or pool of assets;

(b)   entitlement to a share of profits, losses, assets or liabilities of the issuer or any other person or pool of assets, except in the event of the liquidation of the issuer, to receive a portion of the original subscription price paid at the time of the initial token offering;

(c)   legal status as a creditor; or

(d)   entitlement to receive distribution of profits, revenues, assets or other distributions from the issuer or any other person or pool of assets;

**"virtual currency token"** means a digital representation of value which can be digitally traded and functions as —

(a)   a medium of exchange;

(b)   a unit of account; or

(c)   a store of value,

that is not a digital currency and does not have legal tender status or carry any security or guarantee in any jurisdiction;

(2)   For the purposes of this Act —

(a)   in determining whether a person is fit and proper, in addition to considering any other relevant matter including a decision made in respect of the person by the Commission, or other regulator, court or tribunal wherever located, the Commission shall have regard to —

(i)   financial status or solvency of the person;

(ii)   the educational or other qualifications and experience of the person, having regard to the nature of the role or functions that, if the application is allowed or granted, the person will perform;

(iii)   the ability of the person to carry on the regulated activity competently, honestly and fairly;

(iv)   the ability of the person to ensure a satisfactory standard of governance organization and operational conduct; and

(v)   the reputation and character of —

(aa)   where the person is an individual, the individual himself; or

(bb)   where the person is a legal entity, the legal entity and any director, shareholder, chief executive officer and any other officer.

(b)   A person carries on digital asset business —

Digital Assets and Registered Exchanges Bill, 2020

   (i) in The Bahamas, if irrespective of physical location, the person offers digital asset business services to Bahamian residents from anywhere in the world; and

   (ii) from within The Bahamas, if the person being a legal entity registered or incorporated under the laws of The Bahamas, offers digital asset business services to persons outside or within The Bahamas; and

  (c) A person shall not be deemed to be carrying on digital asset business in or from within The Bahamas solely due to the presence of data servers or maintenance of other parts of a DLT platform in The Bahamas.

### 3. Application of Act.

 (1) This Act shall apply to —

  (a) any person who as organizer, issuer, founder, purchaser or investor participates in the formation, promotion, maintenance, organization, sale or redemption of an initial token offering; and

  (b) any legal entity carrying on a digital asset business irrespective of the physical location from which the activity is carried out.

 (2) This Act shall not apply to —

  (a) a person only by reason of his acting in a professional capacity on behalf of persons engaged in procuring the organisation, promotion, issuance, sale or trade of digital assets; or

  (b) security tokens which for the purpose of this Act is a token which when issued or traded has one or more of the same characteristics as a security as defined under Part I of the *First Schedule* of the Securities Industry Act;or

  (c) transactions or digital assets in which a person grants a value as part of an affinity or rewards program, which value cannot be taken from or exchanged with the person for legal tender, bank credit or any digital asset; or

  (d) a digital representation of value issued by or on behalf the publisher and used within an online game, game platform, or family of games sold by the same publisher or offered on the same game platform; or

  (e) non-fungible tokens; or

  (f) electronic representations of a fiat currency, security or any other financial asset.

# PART II – ADMINISTRATION OF ACT

**4.    Securities Commission to administer Act.**

(1)    This Act shall be administered by the Securities Commission of The Bahamas.

(2)    Pursuant to section 5(1)(a), the Commission shall regulate and supervise the issuance of digital assets, digital asset businesses and their activities in The Bahamas for the purpose of ensuring the —

    (a)    orderly development and continuation of digital asset activities in The Bahamas; and

    (b)    development and maintenance of investor protection standards with respect to the digital asset business and initial token offers.

**5.    Functions and powers of Commission.**

(1)    For the purposes of this Act, the functions of the Commission are  —

    (a)    to regulate, monitor and supervise the issuance of digital assets and persons conducting digital asset business in or from within The Bahamas;

    (b)    to develop rules, guidance and codes of practice in connection with the conduct of digital asset business and initial token offers;

    (c)    to advise the Minister on all matters relating to digital asset business; and

    (d)    to promote investor education and other conditions that facilitate innovation and development of digital asset businesses within The Bahamas.

(2)    For the purpose of the discharge of its functions under subsection (1), the Commission shall have the power to —

    (a)    approve and regulate a digital asset business;

    (b)    regulate initial and subsequent token offers;

    (c)    make and issue rules on the conduct of digital asset businesses and issuers;

    (d)    take enforcement action against any person for failing to comply with this Act;

    (e)    publish notices, guidelines, bulletins, and policies regarding the interpretation, application or enforcement of the Act and any rules or regulations issued under this Act;

    (f)    prescribe fees payable to the Commission for the purposes of carrying out its functions under this Ac;

    (g)    make recommendations to the Minister for regulations; and

(h)    do all things, and take all actions, which may be necessary or expedient or are incidental to the discharge of any function or power given to the Commission.

# PART III – REGISTRATION AND  REGULATION OF DIGITAL ASSET BUSINESSES

## DIGITAL ASSETS BUSINESSES

**6.    Forms of digital asset businesses.**

A digital asset business includes the business of  —

(a)    a digital token exchange;

(b)    providing services related to a digital token exchange;

(c)    operating as a payment service provider business utilising digital assets;

(d)    operating as a digital asset service provider, including providing DLT platforms that facilitates —

(i)    the exchange between digital assets and fiat currencies;

(ii)    the exchange between one or more forms of digital assets; and

(iii)    the transfer of digital assets;

(e)    participation in and provision of financial services related to an issuer's offer or sale of a digital asset; and

(f)    any other activity which may be prescribed by regulations.

**7.    Prohibition to carry on unregistered digital asset business.**

No person shall carry on or shall be involved in a digital asset business in or from within The Bahamas, or purport to do so, unless that person is a legal entity registered under section 8 or 9.

**8.    Registration of a digital asset business.**

(1)    Subject to subsection (4), a legal entity intending to provide or which is providing services as a digital asset business shall apply to be registered under the provisions of this Act by submitting to the Commission, the following –

(a)    completed Form 1 set out under Part A of the *First Schedule* which application shall be accompanied by —

(i)    a copy of a detailed and up to date business plan of the applicant, including financial and operational projections,

   staffing requirements, and technological requirements, as applicable;

  (ii) evidence of the applicant's good standing in accordance with section 277 of the Companies Act *(Ch. 308)*;

  (iii) a certified copy of the applicant's Memorandum and Articles of Association, or equivalent constitutive documents;

  (iv) a schedule of proposed fees for services rendered by the business;

  (v) evidence of the applicant's registration with any other regulatory authority, if applicable; and

  (vi) any other information or document as may be required by the Commission;

 (b) completed Form 2 set out under Part A of the *First Schedule* in respect of each founder, beneficial owner, security holder, director and officer of the applicant digital asset business;

 (c) completed Form 3 set out under Part A of the *First Schedule* with respect to the Chief Executive Officer and the Compliance Officer; and

 (d) the application fee set out in the *Third Schedule*.

(2) The Commission may grant or refuse an application made under subsection (1).

(3) A person who intends to register a digital asset business operating as a digital token exchange, shall in addition to complying with subsection (1), also apply for registration in accordance with section 15.

(4) All registrations shall be renewed annually by the 31st day of January of each year and for such renewal, a licensee shall —

 (a) pay the prescribed annual fee; and

 (b) submit the prescribed Annual Update and Declaration Form, and where applicable, a current copy of the registrant's insurance policy to the Commission.

(5) Where a registration is not renewed by the annual renewal date, a registrant shall in addition to the outstanding annual fee pay an automatic penalty of ten percent of the prescribed annual fee to the Commission, which penalty shall not be set off against the prescribed annual fee.

(6) A registration shall be automatically revoked where, more than thirty days have elapsed after the annual renewal date and a registrant has either failed to submit the prescribed Annual Update and Declaration Form or pay the prescribed annual fee.

Digital Assets and Registered Exchanges Bill, 2020

(7)   Where a registration has been revoked under subsection (6), the registration may be restored by the Commission if, within thirty days of the revocation date, the registrant —

    (a)   applies to the Commission for restoration;

    (b)   pays an administrative penalty of twenty percent of the annual fee due; and

    (c)   as applicable, submits —

        (i)   the annual update and declaration form; or

        (ii)   a copy of the licensee's insurance policy or

    (d)   pays the outstanding annual fee.

(8)   For the purpose of subsection (6), and where a registrant has made no application for restoration under subsection (7), the Commission shall remove the registrant from the register required to be kept and maintained under section 12.

**9.   Digital asset business as additional activity.**

(1)   Where a person, who intends to provide services related to a digital asset business as an additional activity —

    (a)   is either —

        (i)   registered under the Securities Industry Act*;*

        (ii)   licensed as an investment fund administrator under the Investment Funds Act; or

        (iii)   licensed as a financial or corporate service provider under the Financial and Corporate Service Providers Act (*Ch. 369*),

        such person shall apply to be registered under this Act by submitting the completed Form 1 set out under Part B of the *First Schedule*; or

    (b)   being a marketplace or registered firm, shall otherwise comply with regulations 27(1)(a) and 53(1)(a) of the Securities Industry Regulations.

(2)   Where a person is registered under this Act with respect to one or more digital asset business activities, and intends to provide an additional digital asset business service, such person shall submit completed Form 1 under Part B of the *First Schedule* to the Commission no later than fourteen days prior to commencing the provision of such services, and shall also submit to the Commission —

    (a)   a copy of a detailed and up to date business plan, including financial and operational projections, staffing qualifications and requirements, and technological requirements;

(b)   if the additional business is a digital token exchange, a copy of the rules of the exchange including rules for admission to listing of digital assets on the exchange;

(c)   a schedule of proposed fees for the services to be rendered by the digital asset business; and

(d)   the application fee set out in the *Third Schedule*.

**10.   Duty to notify changes relating to application for registration.**

A person registered under this Act shall immediately notify the Commission by filing the completed Form set out in the *Fourth Schedule* of any change relevant to its application for registration concerning —

(a)   address for service;

(b)   contact information, including email address and phone or fax numbers;

(c)   physical business address;

(d)    insurance coverage; or

(e)   attorneys and corporate officers;

(f)   compliance officer; or

(g)   a money laundering reporting officer.

**11.   Financial requirements of digital asset businesses**

Registrants shall meet all financial requirements as may be prescribed.

**12.   Commission to maintain Register of digital asset businesses.**

(1)   The Commission shall establish and maintain a register of digital asset businesses which shall —

(a)   be kept in electronic format and any other format as the Commission may determine;

(b)   include in respect of every digital asset business —

(i)    the name and address of the digital asset business;

(ii)   the regulatory licenses or registrations held by the business including any foreign licenses or registrations;

(iii)  the form of digital asset services business of the registrant;

(iv)   the name of its principals, directors or other person with management control;

(v)    any conditions imposed by the Commission; and

(vi)   any other information deemed relevant by the Commission; and

(c)   be accessible for viewing on the Commission's website.

Digital Assets and Registered Exchanges Bill, 2020

(2)     Where the Commission considers it necessary, it may establish and maintain a separate register for any digital asset business, and the provisions of subsection (1)(a) and (b) shall apply *mutatis mutandis*.

### 13.   Commission's prior approval for certain changes.

No registrant shall, without the prior written approval of the Commission —

(a)     expand the scope of its activities;

(b)     issue new tokens;

(c)     merge with another entity;

(d)     issue, transfer or otherwise dispose of its shares;

(e)     appoint a new director or partner;

(f)     appoint a compliance officer or money laundering reporting officer;

(g)     add to or reduce its shareholders;

(h)     change or modify its name; or

(i)     appoint any auditor.

## ADDITIONAL REQUIREMENTS FOR DIGITAL TOKEN EXCHANGES

### 14.   Prohibition to operate unregistered digital token exchange.

No person shall offer services as a digital token exchange unless registered under this Act.

### 15.   Application for registration of digital token exchange.

Subject to section 9, a legal entity intending to establish and operate a digital token exchange shall in addition to making an application in accordance with section 8 —

(a)     make application to the Commission by submitting Form 1 set out under Part C of the *First Schedule;*

(b)     provide to the Commission for its approval a copy of the rules of the exchange including rules for admission to listing of digital assets on the exchange; and

(c)     submit to the Commission —

(i)      the applicable fee set out in the *Third Schedule*; and

(ii)     any other document or information the Commission may require.

### 16.   Approval or refusal of application.

(1)     The Commission shall approve or refuse an application under this Part in its discretion.

(2)  The Commission may approve an application for registration where satisfied that an applicant under this Part —

(a)  is incorporated, established or registered under any law of the Commonwealth of The Bahamas;

(b)  is fit and proper; and

(c)  has sufficient capacity and resources to conduct an activity under this Act.

(3)  An applicant shall demonstrate to the Commission that it has —

(a)  appropriate and sufficient systems and controls to perform its functions and manage its risks, including fraud and market abuse;

(b)  the ability to meet solvency standards and levels of capital as may be prescribed by regulations; and

(c)  has designed a digital asset framework which addresses but is not limited to the following —

(i)  technology and security;

(ii)  governance;

(iii)  scalability;

(iv)  identified risk framework; and

(v)  data protection and storage.

## 17.  Adequate systems and controls for digital token exchanges.

A digital token exchange shall ensure that the systems and controls used in its activities are adequate and appropriate for the scale and nature of its business, including systems and controls which adequately and appropriately address —

(a)  the recording, storing, protecting and transmission of information;

(b)  the effecting and monitoring of transactions;

(c)  the operation of the arrangements made for securing the timely discharge, whether by performance, compromise or otherwise, of the rights and liabilities of the parties to transactions;

(d)  the safeguarding and administration of assets belonging to investors; and

(e)  in the event of disruption, business continuity and planning.

## 18.  Digital exchange to satisfy ongoing requirements.

A digital token exchange shall satisfy any ongoing requirements as may be prescribed.

Digital Assets and Registered Exchanges Bill, 2020

## SUSPENSION, REVOCATION OR SURRENDER OF REGISTRATION

**19.   Suspension or revocation of registration.**

(1)   The Commission may suspend or revoke the registration of a digital asset business where —

(a)   the digital asset business is unable to meet the requirements for continued operation or has failed to comply with the provisions of this Act or any regulations, rules or guidelines made and issued hereunder;

(b)   suspension or revocation would be in the public interest;

(c)   the digital asset business is being marketed or advertised in a manner that is fraudulent or misleading;

(d)   any operator or issuer of the digital asset business is convicted of a criminal offence involving fraud or dishonesty;

(e)   the digital asset business is declared bankrupt or goes into liquidation or makes a composition with its creditors or is otherwise dissolved; or

(f)   at the written request of another competent regulatory authority which is carrying out regulatory functions in relation to the relevant registrant;

(g)   the digital asset business is being conducted in breach of this Act or in breach of any other law of The Bahamas;

(h)   any information furnished to the Commission to obtain registration and during the course of such registration is false or misleading;

(i)   if the registration has been obtained by fraud; or

(j)   in the case of a digital token exchange —

(i)   the Commission considers that the person operating the exchange is no longer a fit and proper person to provide the service;

(ii)   the Commission has been furnished with information by or on behalf of the exchange, which is false, inaccurate or misleading;

(iii)   the exchange has not commenced the services it has been authorised to provide within twelve months from the date of issue of the registration; or

(iv)   the exchange has ceased to provide digital exchange services.

(2)   Subject to subsection (3), where a decision to suspend or revoke a registration has been made, the Commission may issue a notice of suspension to the registrant, which notice shall be issued at least fourteen days prior to the effective date of the suspension or revocation, and the

digital asset business shall have seven days from the receipt of such notice in which to respond.

(3)     Notwithstanding subsection (2), the Commission may —

    (a)     suspend the registration of the digital asset business without prior notice where the Commission deems that an immediate suspension of the registration of the digital asset business is necessary to protect the public; or

    (b)     revoke the registration of a digital asset business  —

        (i)     without suspension, where the digital asset business has voluntarily surrendered its registration; or

        (i)     without suspension where any of the matters referred to in section (1) (b) – (j) is of such a nature that it is in the best interest of the public to revoke the registration; or

        (ii)     where, having had its registration suspended, the registrant has failed to comply with any conditions imposed or directions given by the Commission within the stipulated timeline.

(4)     Where the Commission has suspended the registration of a digital asset business, the Commission may impose such conditions upon or give such directions to the registrant, including the timeline for compliance, with which conditions or directions the registrant must comply.

(5)     The Commission may reinstate a suspended registration where satisfied that the digital asset business has met the conditions imposed or the directions given at the time of suspension.

(6)     The Commission may reinstate a suspended registration with or without conditions in its discretion.

(7)     Upon the revocation of a licence issued under the provisions of this Act, the Commission shall notify —

    (a)     any relevant licensing or regulatory authority; and

    (b)     members of the public, by notice posted on the Commission's website and published in the Gazette.

## 20.   Surrender of registration.

(1)     With the approval of the Commission, a registrant may voluntarily surrender its registration by written notice to the Commission at any time after the registration has been granted, and such surrender shall be irrevocable.

(2)     Where the Commission approves a surrender of registration, the provisions of section 22 shall apply.

Digital Assets and Registered Exchanges Bill, 2020

**21.   Process following surrender or revocation.**

(1)   Where –

(a)   the Commission has issued a notice pursuant to section 20(2) without objection from a registrant; or

(b)   registration has been voluntarily surrendered,

the registrant shall, within seven days of receiving the Commission's suspension or revocation notice, or submitting its written notice of surrender, prepare and submit a written plan to the Commission setting out the steps the registrant will follow to cease operations.

(2)   The plan required under subsection (1) shall stipulate and provide the details with respect to —

(a)   the identity of the individual who will manage the licensee's cessation of business operations;

(b)   the length of time required to cease business operations;

(c)   the manner in which client files will[VD1] be closed and secured;

(d)   client notification procedures; and

(e)   client transfer procedures where applicable.

(3)   Upon the Commission's approval of a plan submitted by the licensee, the Commission —

(a)   shall supervise the execution of the plan; and

(b)   may give directions to the licensee to protect the interest of investors or purchasers, with which such directions the licensee shall comply.

**22.   Winding up or dissolution.**

Where the Commission has revoked a licence in any of the circumstances under section 20(1), the Commission may apply to the court for the —

(a)   registrant to be wound up or dissolved; or

(b)   court supervision of any application by the registrant for winding up or dissolution.


DATA PROTECTION

**23.   Record keeping and prevention of unauthorized data access.**

(1)   A registrant shall implement and maintain where applicable record keeping measures for the accurate collection of information and documents related to the originator and beneficiary of digital assets.

(2)   Every registrant shall implement and maintain data protection measures consistent with the Data Protection (Privacy of Personal Information) Act *(Ch. 324A)* concerning the protection of personal data relative to its customers and as may be prescribed.

## CONDUCT AND COMPLIANCE

### 24.   Duty to maintain professional conduct.

Every digital asset business registered under this Act shall, in conducting its business activities —

(a)   act honestly and fairly;

(b)   act with due skill, care and diligence;

(c)   observe and maintain a high standard of professional conduct;

(d)   refrain from engaging in any improper or illegal conduct;

(e)   maintain adequate financial resources and solvency;

(f)   have effective arrangements in place for the protection of client assets and money;

(g)   have effective corporate governance arrangements consistent with guidelines issued by the Commission; and

(h)   have systems in place to prevent, detect and disclose money laundering, terrorist financing and suspicious transactions pursuant to the provisions of the Proceeds of Crime Act, 2018 *(No. 4 of 2018)* the Anti-Terrorism Act, *2018* and the Financial Transactions and Reporting Act, 2018 *(No. 5 of 2018)*.

### 25.   General duty to comply and co-operate.

(1)   Every digital asset business and issuer shall comply with this Act and shall —

(a)   deal openly and honestly and co-operatively with the Commission;

(b)   duly provide information relevant to the operations of the digital asset business as the Commission may require; and

(c)   submit to on-site or off-site examinations of the digital asset business as required by the Commission in the exercise of its functions.

(2)   For the purpose of subsection (1), compliance with this Act shall be considered a part of the minimum criteria for continued registration.

Digital Assets and Registered Exchanges Bill, 2020

## AML AND CFT PREVENTION MEASURES

**26.   Prevention of money laundering and terrorism financing.**

Where a digital asset business provides services involving the sale, exchange, or transfer of a digital asset, it shall, with respect to its own activities and such digital assets, for the purpose of risk management and the prevention of money laundering and terrorism financing —

(a)   conduct a risk assessment;

(b)   implement and maintain policies and procedures to ensure compliance with provisions of the Proceeds of Crime Act, *2018*, Anti-Terrorism Act, *2018* and the Financial Transactions Reporting Act, 2018 *(No. 5 of 2018)*; and

(c)   comply with the rules, policies and guidelines made and issued by the Commission on risk management and the prevention of money laundering and terrorist financing.

# PART IV - INITIAL TOKEN OFFERING

**27.   Initial token offerings.**

(1)   No issuer shall offer a digital token in or from within The Bahamas except in compliance with this Act.

(2)   An issuer that intends to offer digital tokens for sale in or from within The Bahamas through an initial token offer —

(a)   shall be fit and proper;

(b)   shall prepare an offering memorandum in accordance with section 29; and

(c)   shall comply with any regulations, rules or guidelines made under this Act.

**28.   The offering memorandum.**

(1)   For the purpose of preparing the offering memorandum, an issuer shall have a duty to provide full and accurate disclosure of all information which would allow potential purchasers to make an informed decision.

(2)   Every offering memorandum published in connection with an initial token offering shall —

(a)   be signed by every founder and member of the issuer's board; and

(b)   address the matters specified in *Second Schedule*.

(3)  An issuer has a duty to publish the offering memorandum by posting a copy of the memorandum on a website operated and maintained by the issuer, which is readily accessible to and downloadable by potential purchasers for the duration of the offer period and for no less than fifteen days after the offer period ends.

(4)  Where any of the disclosures required under the *Second Schedule* cease to be accurate in a material particular prior to the end of the offer period for the initial token offering, the issuer shall —

(a)  immediately and in any event within one day of becoming aware of the inaccuracy, notify the Commission of the initial token offering, providing —

(i)  details of the inaccuracy; and

(ii)  the appropriate amendment to the offering memorandum; and

(b)  within five days of notifying the Commission of the inaccuracy, publish a notice on its website to notify subscribers to the memorandum, and and include in the published notice the issuer's amendment to the offering memorandum rectifying the inaccuracy

### 29.  Offer period.

(1)  Any token offered shall be distributed only during the offer period stipulated in the relevant offering memorandum.

(2)  For the purpose of subsection (1), no offer period shall exceed six months and where the offer period exceeds six months the Commission shall order the cancellation of any initial token offering and take enforcement action.

### 30.  Classification of tokens.

(1)  For the purpose of section 31, an issuer shall identify the class or classes of tokens which will be available for subscription in the offering memorandum.

(2)  No issuer shall change the class or classes of tokens to be offered except with prior written approval of the Commission.

(3)  Where the Commission has approved a change of class of tokens in accordance with subsection (2), the issuer shall amend the Offering Memorandum accordingly.

(4)  Every issuer shall obtain from a counsel and attorney, a written legal opinion concerning the classification of the issuer's tokens, which opinion shall be attached to the offering memorandum.

Digital Assets and Registered Exchanges Bill, 2020

**31.    Registration of initial token offering.**

(1)    An issuer shall apply for registration of an initial token offering no later than forty-five days before the start of the offer period.

(2)    The application referred to in subsection (1), shall be —

(a)    submitted using Form 1 set out under Part D of the *First Schedule*;

(b) accompanied by —

(i)    the written legal opinion obtained in accordance with section 30(3);

(ii)    the offering memorandum; and

(iii)    the application fee set out in the *Third Schedule*.

(3)    The Commission shall within thirty days from the receipt of the application, determine whether the application meets the requirements of this Act which determination shall include an assessment of the opinion on the assessment of the classification of the token.

(4)    Where the Commission's assessment is that a token is a security, an issuer shall withdraw its application for registration of the token and may proceed to have the token registered under the provisions of the Securities Industry Act.

**32.    Approval of application.**

Where, following a review of the application and documents submitted in relation to an initial token offering, the Commission does not object to the application for registration, the Commission shall thereafter approve the initial token offering.

**33.    Advertisement of initial token offering.**

Any advertisement relating to an initial token offering shall be —

(a)    accurate and not misleading;

(b)    clearly identifiable as an advertisement;

(c)    consistent with the information contained in the offering memorandum; and

(d)    compliant with any requirements prescribed by the Commission.

**34.    Powers of Commission in connection with initial token offering.**

The Commission may —

(a)    order the amendment of an offering memorandum to include supplementary information; or

(b)    suspend any initial token offering with notice in writing to the issuer if the Commission reasonably suspects that the offering is

being conducted in breach of this Act or in a manner that is injurious to the public; or

(c)    require the amendment or removal of any advertisement, material or publication on the issuer's website concerning the offering which the Commission considers as inaccurate or misleading; and

(d)    publish a notice advising the public of any action taken pursuant to this section.

### 35.    Token register.

The Commission shall keep a register of initial token offerings and shall include in respect of every initial token offering —

(a)    the name and address of the issuer;

(b)    the regulatory licenses or registrations held by the issuer including any foreign registrations;

(c)    the name and symbol of the token created;

(d)    the exchange or platform on which the token is traded;

(e)    any condition imposed by the Commission, including conditions concerning the sale or redemption of the token;

(f)    any other information deemed relevant by the Commission.

### 36.    Continuing obligations of an issuer to disclose.

(1)    Where, after the offering memorandum has been issued but before the close of the offer period, an issuer becomes aware of any information which could affect the interests of purchasers, the issuer shall immediately notify the Commission and disclose that information by a supplement to the offering memorandum.

(2)    Where an issuer fails to notify the Commission or make a disclosure in accordance with subsection (1), the issuer shall be subject to an administrative penalty of up to ten thousand dollars.

## PURCHASERS' RIGHTS

### 37.    Purchaser's right to rescission or damages.

Where an issuer publishes an offering memorandum or any amendment thereto which contains a material misrepresentation relating to any of the requirements set out in the *Second Schedule*, a purchaser shall have a right of action against the issuer —

(a)    for the rescission of the subscription; or

(b)    for damages.

Digital Assets and Registered Exchanges Bill, 2020

**38.   Purchaser's right of withdrawal.**

(1)   A purchaser of a token offered under the provisions of this Act shall be entitled to withdraw his purchase by written notice to the issuer.

(2)   A purchaser's notice of withdrawal shall be made no later than seventy-two hours after the date of the agreement to purchase the token.

(3)   Where a purchaser has exercised the right of withdrawal, all funds paid by the purchaser shall be paid over by the issuer to the purchaser within two days of the purchaser's request.

# PART V – INVESTIGATION AND COOPERATION

**39.   Power to inspect and investigate.**

(1)   The Commission shall have power to conduct on-site or off-site inspections of the business of any registrant under this Act to determine whether such person is complying with —

(a)   the provisions of this Act or any regulations, rules or guidance issued in accordance with the provisions of this Act;

(b)   the Financial Transactions Reporting Act, 2018 *(No. 5 of 2018)* and any other anti- money laundering or counter-financing of terrorism laws; or

(c)   any other relevant law.

(2)   Notwithstanding subsection (1), the Commission shall have power to conduct such investigation as it considers necessary for the purpose of satisfying itself that —

(a)   a person registered under this Act is complying with subsection (1) (a), (b), or (c); or

(b)   no unregistered persons are engaged in an activity regulated under the provisions of this Act.

**40.   Agents to conduct inspections and investigations.**

(1)   The Commission may engage a qualified person to conduct an inspection or investigation ("hereinafter referred to as an agent"), at the expense of the registrant, on behalf of and the direction of the Commission in accordance with section 39.

(2)   The person engaged as an agent under subsection (1) shall, at the conclusion of an inspection or investigation, produce and submit to the Commission, a written report of the findings of the inspection or investigation.

**41.   Co-operative power.**

(1)   At the request of a domestic regulatory authority, the Commission may exercise its powers under this Act to assist with the performance by the domestic regulatory authority of its functions.

(2)   Notwithstanding section 28(1) of the Securities Industry Act the Commission may provide information, documents or material it has acquired in the exercise of its functions under this Act to any other domestic regulatory authority where the Commission considers such information may be relevant to the functions of such other domestic regulatory   authority or as a necessary part of a framework for consolidated supervision, oversight or regulation of the financial services sector.

(3)   The Commission may provide assistance to an overseas regulatory authority where satisfied that —

   (a)   such assistance may be relevant to the functions of the overseas regulatory authority and is intended to enable such authority to carry out the supervision, investigation or enforcement to which the request relates;

   (b)   overseas regulatory authority has given a written undertaking that any material obtained pursuant to its request shall not, except with the approval or consent of the Commission be —

      (i)   used for any purpose other than a purpose that is specified at the time of the request; and

      (ii)   disclosed to any third party, other than a designated third party.

   (c)   the material requested is of sufficient importance to the carrying out of the supervision, investigation or enforcement to which the request relates and cannot reasonably be obtained by any other means;

   (d)   the matter to which the request relates is of sufficient gravity; and

   (e)   the provision of the requested assistance will not be contrary to the national interest of The Bahamas or the interest of the investing public.

(4)   The Commission may, in determining whether to provide assistance to an overseas regulatory authority, consider whether —

   (a)   the act or omission that is alleged to have breached the law or regulatory requirement to which the request relates would, if it had occurred in The Bahamas, be enforceable under this Act;

   (b)   the overseas regulatory authority has given or is willing to give an undertaking to the Commission to —

Digital Assets and Registered Exchanges Bill, 2020

        (i)    comply with a future request by the Commission to the overseas regulatory authority for similar assistance; and

        (ii)   contribute towards the costs of providing the assistance that the overseas regulatory authority has requested.

(5)    Pursuant to subsection (3), and notwithstanding any obligations as to secrecy or restrictions on the disclosure of information by virtue of any written law, any rule of law, any contract or any rule of professional conduct, the Commission may in relation to a request from an overseas regulatory authority —

    (a)   transmit to the overseas regulatory authority any material in the possession of the Commission that is requested by the authority;

    (b)   order any person to furnish the Commission with any material that is requested by the overseas regulatory authority, that the Commission may then transmit to that authority;

    (c)   order any person to give the Commission assistance in connection with a request made by an overseas regulatory authority; or

    (d)   order any person to make an oral statement to the Commission on any information requested by the overseas regulatory authority, record such statement, and transmit the recorded statement to that authority.

(6)    A person shall not be required to disclose information or produce a document which that person would be entitled to refuse to disclose or produce on the grounds of legal professional privilege in court proceedings, and the information or documents shall be deemed to be privileged if it was given to the person as a professional legal advisor —

    (a)   by, or by a representative of, a client of the advisor in connection with the giving of legal advice to the client;

    (b)   by, or by a representative of, a person seeking legal advice from the advisor; or

    (c)   by any person —

        (i)    in contemplation of, or in connection with, legal proceedings; and

        (ii)   for the purpose of those proceedings.

(7)    Where a person in possession of any document required to be produced in response to an order made under subsection (5) claims a lien on the document —

    (a)   the requirement to produce the document shall not be affected by the lien;

    (b)   no fees shall be payable for or in respect of the production; and

    (c)   the production shall be without prejudice to the lien.

(8)  No civil or criminal proceedings, except for an offence under subsection (9) shall lie against any person, who in compliance with an order made under subsection (4), —

   (a)  furnishes the Commission with any information or material in any form, including any document or copy thereof;

   (b)  makes a statement to the Commission in good faith; or

   (c)  gives assistance to the Commission by doing or omitting to do any act, the doing or omission of the act is done in good faith.

(9)  It shall be an offence, punishable on summary conviction to a fine not exceeding one hundred thousand dollars, for any person, in response to an order made under subsection (4), to —

   (a)  without reasonable excuse, refuse or fail to comply with the order;

   (b)  knowingly furnish the Commission with any false or misleading information or material in any form, including any document or copy thereof; or

   (c)  knowingly make a statement to the Commission that is false or misleading in a material particular.

(10)  In the exercise of its cooperative power under this section, the Commission shall have authority to enter into memoranda of understanding with overseas regulatory authorities subject to the following —

   (a)  the memoranda of understanding shall be —

      (i)  for the mutual and reciprocal assistance of an overseas regulatory authority, or any designated third party, in carrying out supervision, investigation or enforcement functions;

      (ii)  related to the consolidated supervision with an overseas regulatory authority, or designated third party; or

      (iii)  for the purpose of the Commission's supervision, investigation or enforcement functions under this Act, or any other lawful purpose;

   (b)  the scope of the memoranda of understanding shall not exceed the Commission's powers under the provisions of this section; and

   (c)  notice of the memoranda of understanding is issued to the Ministry of Finance and published on the Commission's website and in the *Gazette*.

For the purpose of this section –

   **"designated third party"** includes —

      (a)  a person or body responsible for supervising the relevant regulatory authority;

Digital Assets and Registered Exchanges Bill, 2020

    (b)    any authority responsible for carrying out the supervision, investigation or enforcement of laws alleged to have been breached; or

    (c)    any authority of the foreign jurisdiction, other than the requesting overseas regulatory authority, exercising a function that corresponds to a regulatory function of the Commission under this Act;

**"domestic regulatory authority"** means the body or person in The Bahamas that exercises regulatory, supervisory, enforcement or similar functions as the Commission, and includes —

    (a)    regulators supervising financial institutions;

    (b)    securities exchanges;

    (c)    Self –regulatory organisations;

    (d)    law enforcement agencies; and

    (e)    other governmental or regulatory agencies or Competent Authority; and

    (f)    any other Bahamian authority, as prescribed.

**"enforce"** means to enforce through criminal, civil or administrative proceedings;

**"material"** means any document or information in any form;

**"overseas regulatory authority"** means an authority in a jurisdiction outside The Bahamas that exercises similar functions as the Commission regulating digital asset businesses and activities, and includes a designated third party.

**"supervision"** in relation to an overseas regulatory authority, means the taking of any action for the supervision of –

    (a)    a digital exchange or any other person regulated or supervised by the overseas regulatory authority; or

    (b)    the issue of or trading in digital assets in the foreign jurisdiction of the overseas regulatory authority.

# PART VI – OFFENCES, PENALTIES AND SANCTIONS

## OFFENCES AND PENALTIES

### 42.    Offence.

(1)    A person who fails to comply with the provisions of this Act commits an offence.

(2)    Every digital asset business or any of its employees, managers, officers or other connection persons, who —

    (a)    fails to cooperate with the Commission; or

    (b)    obstructs or assaults any person appointed by or acting on behalf of the Commission in the conduct of an examination, inspection or an investigation,

commits an offence and is liable on summary conviction to a fine not exceeding five thousand dollars.

(3)    For the purposes of subsection (2), it shall not be relevant whether the employee, manager, officer or connected person was acting on specific instruction of any individual having control or responsibility for the management or operation of the digital asset business.

### 43.    Liability of officer, director, etc.

Where an offence under this Act has been committed and it is proved that the offence occurred with the consent or connivance or gross negligence of any officer, director, manager, partner, or person purporting to act in any such capacity, each such person shall also be guilty of the offence.

### 44.    General penalty.

Any person who commits an offence under this Act for which no penalty is provided shall be liable on indictment or summary conviction to a fine not exceeding five hundred thousand dollars or imprisonment up to five years or both a fine and imprisonment.

### 45.    Misrepresentations.

Any person who —

    (a)    wilfully makes any misrepresentation in any document required to be filed or submitted under this Act;

    (b)    wilfully makes any statement or gives any information required for the purpose of this Act which he knows to be materially false or misleading; or

    (c)    knowingly fails to disclose any fact or information required to be disclosed for the purposes of this Act,

commits an offence and shall be liable on indictment or summary conviction to a fine not exceeding five hundred thousand dollars in respect of each instance or imprisonment up to ten years or to both fine and imprisonment.

Digital Assets and Registered Exchanges Bill, 2020

## SANCTIONS

**46.   Administrative sanction.**

(1)   Notwithstanding any other action which may be taken by the Commission, where there has been a failure to comply with this Act, the Commission may impose an administrative sanction for such failure, which sanction may include but not be limited to —

    (a)   issuing a public reprimand;

    (b)   banning a registrant from carrying on certain activities or operations;

    (c)   setting conditions or restrictions on a registrant;

    (d)   issuing an order —

        (i)   requiring that a registrant complies with a direction issued by the Commission;

        (ii)   withdrawing an exemption or waiver;

        (i)   prohibiting a person from acting as a director, partner, or officer of a legal entity;

        (iv)   prohibiting a person from being appointed as auditor;

        (v)   requiring a registrant to make changes to its practices and procedures;

        (vi)   for restitution;

        (vii)   for the registrant to temporarily suspend a manager;

        (viii)   for the registrant to remove a director, officer or other senior manager of general partner; or

        (ix)   for disgorgement of profits or unjust enrichment;

    (e)   appointing a person, at the expense of the registrant, to —

        (i)   oversee the affairs of the registrant and report to the Commission; or

        (ii)   assume control of a registrant's affairs who shall, subject to necessary modifications, have all of the powers of a person appointed as a receiver or manager of a business appointed under the law governing bankruptcy or winding up.

    (f)   applying to the court for an order to take such action as the Commission considers necessary to protect the interest of clients or creditors of a registrant;

    (g)   with respect to subsection (1)(d)(ix), requiring a registrant to pay an administrative penalty not exceeding twice the amount of such profits or unjust enrichment;

    (h)   revoking a licence pursuant to section 19; or

    (i)    imposing any other penalties, sanctions, or remedies as the circumstances of the case may require.

(2)    The sanctions and actions under subsection (2) may be imposed by the Commission where satisfied that a registrant has —

    (a)    breached any provisions of this Act;

    (b)    failed to comply with the Financial Transactions Reporting Act, 2018 *(No. 5 of 2018)*; or

    (c)    failed to comply with any guidelines issued by the Financial Intelligence Unit pursuant to section 15 of the Financial Intelligence Unit Act *(Ch. 367)*.

(3)    Where the Commission imposes a sanction or takes action pursuant to subsection (1) —

    (a)    the order shall be in writing;

    (b)    the order shall specify the breach committed by the registrant and the sanction imposed by the Commission;

    (c)    a copy of the order shall be given to the registrant; and

    (d)    the order may be enforced in the same manner as an order of the court.

# PART VII – MISCELLANEOUS

## 47.   Appeals.

(1)    Any person aggrieved by a decision of the Commission may appeal that decision.

(2)    An appeal under this section shall be to the Supreme Court in accordance with rules of court within thirty days after the Commission's decision has been made.

(3)    Notwithstanding that an appeal has been filed with the court, such appeal shall not act as a stay of the Commission's decision unless the court grants a stay until the disposition of the appeal.

(4)    The Secretary to the Commission shall certify to the Supreme Court —

    (a)    the Commission's decision, together with a statement of reasons for that decision; and

    (b)    the record of correspondence or other material between the Commission that is relevant to the appeal.

(5)    A decision of the court shall not preclude the Commission from making any further decisions upon new material or significant change in the relevant circumstances.

Digital Assets and Registered Exchanges Bill, 2020

**48.     Administrative proceedings and reviews.**

(1)   Any person directly affected by a decision of the Executive Director or any employee exercising delegated authority from the Commission shall be entitled to a hearing and review that decision.

(2)   A request for the hearing and review of a decision shall be made by notice in writing to the Commission within thirty days after the date the decision was issued.

(3)   Upon a hearing and a review, the Commission may by order confirm the decision under review or make such other decision as the Commission considers proper.

(4)   Notwithstanding the fact that a person requests a hearing and review under subsection (3), the decision under review takes effect immediately but the Commission may grant a stay until disposition of the hearing and review.

**49.     Fees.**

(1)   The *Third Schedule* shall have effect for the fees payable in respect of the matters listed therein.

(2)   The fees payable under this Act shall —

(a)   be payable to the Securities Commission of The Bahamas;

(b)   not form part of the Consolidated Fund; and,

(b)   be applied by the Commission for the purpose of exercising its powers and performing its functions and duties under this Act.

**50.     Rules.**

(1)   In carrying out the purposes of this Act, the Commission may make rules providing for such matters as may be necessary or expedient for giving effect to such purposes, functions and responsibilities.

(2)   The Commission may make Rules to apply and disapply the application of this Act to —

(a)   a person or class of persons;

(b)   a digital token or class of digital tokens; or

(c)   a digital asset business or class of digital asset businesses.

(3)   The Commission shall publish, in a daily newspaper of general circulation in The Bahamas and on its website, at least sixty days or some shorter period before the proposed effective date thereof –

(a)   a copy of any proposed rule; and

(b)   a concise statement of the substance and purpose of the proposed rule.

(4)     In publishing rules under this Act, the Commission shall give interested parties a reasonable opportunity to make representation with respect to the proposed rules.

(5)     Notwithstanding the requirement to publish and the time period set out in subsection (3), the Commission is not required to comply where –

    (a)     the rule makes no material substantive change in an existing rule;

    (b)     the rule only grants an exemption or relieves a restriction and is not likely to have substantial impact on the interests of person other than those who benefit under it;

    (c)     the Commission, for good cause finds that compliance is impracticable or unnecessary and publishes a concise statement of the reasons for it; or

    (d)     the Commission concludes that there is an urgent need for the proposed rule and compliance would be prejudicial to the public interest.

(6)     The Commission shall furnish the Minister with a copy of the final rule or amendment and where no objection to the rule is made by the Minister within thirty days after the rule was furnished, subsection (8) shall apply.

(7)     Where the Minister objects to a rule or any amendment to a rule, the Commission shall be provided with notice in writing of the reasons for the objection.

(8)     A rule, or any amendment thereof, shall be effective on the date it is published in the *Gazette* or such later date as may be specified in the rule or amendment.

## 51.   Regulations.

The Minister may, after consultation with the Commission, make regulations necessary or expedient for carrying out the purposes of this Act and giving effect to the functions and responsibilities of the Commission under this Act.

## 52.   Guidelines.

The Commission may publish guidelines regarding any regulations or rules made pursuant to this Act provided that such guidelines shall not be taken as having the force of law.

## 53.   Consequential amendments.

The Acts listed in the first column of the table in the *Fifth Schedule* are amended to the extent shown in the second column.

Digital Assets and Registered Exchanges Bill, 2020

### 54. Transitional.

Notwithstanding the provisions of any other law, any person who immediately before the commencement of this Act was engaged in any activity or business regulated under this Act shall —

(a) be deemed to be engaged in such activity under the provisions of this Act; and

(b) apply to the Commission for registration within ninety days of the commencement of this Act.

Schedule                                    Digital Assets and Registered Exchanges Bill, 2020

# FIRST SCHEDULE

## PART A

### Form 1

(Section 8)

**Application for Registration as Digital Asset Business**

**Item 1 – Name of Applicant**

State full legal name of the Applicant.

**Item 2 – Type of Registration Application**

Indicate the digital asset business for which registration is sought —

- A payment service provider utilising digital assets ( )

- Provision of an exchange between digital assets and fiat currencies ( )

- Provision of an exchange between one or more forms of digital assets ()

- Providing the transfer of digital assets ( )

- Provision of financial services related to an issuer's offer or sale of a digital asset

- Other ( )

**Item 3 – Full Business Contact Details of Applicant**

State the applicant's principal business address, including website, and provide email address, telephone numbers and fax numbers. If the Applicant operates more than one address in The Bahamas, provide details for each office.

**Item 4 – Full Details on Founders, Beneficial Owner, Significant Interests Holder, Directors, and Officers**

Provide completed **Form 2** for each founder, beneficial owner or security holder[1], director, and officer of the Applicant.

If the digital tokens of the Applicant are traded on another digital token exchange in any jurisdiction, provide full details of listing.

Provide a list of all affiliates of the Applicant and indicate nature of relationship, businesses the affiliate is in, where incorporated, etc.

### Item 5 – Full Details on Persons to be Carrying on Digital Asset Business on Behalf of Applicant

Provide completed **Form 3** for each person who is to carry on digital asset business on behalf of the Applicant, including Founder, Chief Executive Officer Compliance Officer.

### Item 6 – Discipline History

State whether the applicant or any founder, director, officer or significant interest holder of the applicant has ever been –

   (a)   disciplined by any stock exchange, digital token exchange, regulatory authority or professional association in any jurisdiction or been denied admission, registration or renewal or had its membership or registration revoked;

   (b)   declared bankrupt, been convicted of a crime or been sued under any commercial law, securities law, companies law or law concerning fraud;

   (c)   involved with an application for regulatory approval in any jurisdiction where that application has been refused or withdrawn;

   (d)   dismissed from any office or employment or barred from entry to any profession or occupation; or

   (e)   compulsorily wound up or made any compromise or arrangement with its creditors or ceased trading in circumstances where its creditors did not receive or have not yet received full settlement of their claims.

If so, please provide full details.

### Item 7 – Operational Capabilities

Provide a detailed description of the applicant's operational capabilities, including the physical premises, cybersecurity protocols, data management systems, data protection systems, risk management systems, banking, digital clearing and digital custody arrangements, communication capabilities, as applicable.

Provide names and addresses of principal bankers, digital custodians, digital asset service providers and other service and technical providers, as applicable.

### Item 8 – Policies and Procedures

Provide a summary of the applicant's written supervisory, internal controls and
risk management policies and procedures, including digital token management,
cybersecurity operations, operational controls, AML/CFT policies and controls,
reporting policies, code of conduct, etc. as applicable.

Attach a complete copy of these policies and procedures.

### Item 9 – Financial Statements

The following must be submitted:

Where the applicant has been established within six months of the date of the
application and applicant has not commenced operations -

(a)    a statement from the Chief Executive Officer (or equivalent) of the
applicant confirming that the applicant has not commenced trading
since the date of establishment and that no financial statements
have been produced or dividends declared;

(b)    statements of financial position, of the applicant from the
establishment of the applicant to the current date; and

(c)    No more than three-year financial projections of the applicant.

For all other Applicants –

(a)    audited financial statements for the two financial years immediately
prior to the date of the application or, if shorter, since the date of
establishment;

(b)    the auditor's report accompanying the audited financial statements;
and

(c)    the interim financial statements of the applicant for the prior two
quarters, certified by the Chief Executive Officer (or equivalent) to
be true and complete.

If the Applicant has any significant interests holders that are companies, the
Applicant must also submit for each such security holder —

(a)    audited financial statements for the two financial years immediately
prior to the date of the application or, if shorter, since the date of
establishment;

(b)    the auditor's report accompanying the audited financial statements;
and

(c)    the most recent interim financial statements signed by the Chief
Executive Officer (or equivalent), and the Financial Controller (or
equivalent) to be true and complete.

**Item 10 – Other Regulatory Approvals**

If the applicant is registered, licensed or authorized by any other regulatory authority in The Bahamas or elsewhere, provide details of that status, including name of authority, type of registration, license or authorization, date of approval, registration number, etc.

**Item 11 – Business Plan**

Provide a copy of the applicant's detailed and up to date business plan, inclusive of financial and operational projections, staffing requirements, a description of products and/or services offered, target market, and technological requirements, etc.

**Item 12 – Contact Person at Applicant**

Give the name, business telephone number, and email address of a senior official of the Applicant who is knowledgeable about the application and who may be contacted to discuss it.

**Item 13 – Date the Application**

**Item 14 – Certification and Signature**

Include the signature of two senior officers certifying the following statement –

*"We, the undersigned, hereby affirm that to the best of our information, knowledge and belief that*

  *a. the Applicant is currently in compliance with all the applicable provisions of the Act; and*

  *b. the contents of this form and any attachments provided with this form are true, correct and not misleading."*

***WARNING: Intentional misstatement or failure to disclose information may constitute an offence.***

**Required attachments:**

1. Copy of the applicant's written supervisory, internal controls and risk management policies and procedures.

2. A copy applicant's detailed and up to date business plan, inclusive of financial and operational projections, staffing requirements, a description of products and/or services offered, target market, and technological requirements, etc.

3.  Copies of required financial statements.

4.  Evidence that the company has adequate insurance and regulatory capital.

5.  An organizational chart for the firm together with job descriptions for each position. (Include total number of employees in the company).

6.  Evidence of the applicant's good standing in accordance with section 277 of the Companies Act (*Ch. 308*).

7.  A certified copy of the applicant's Memorandum and Articles of association, or equivalent incorporation documents.

8.  A schedule of proposed fees for services rendered by the business.

9.  Evidence of the applicant's registration with any other regulatory authority, if applicable.

10. Completed Form 2 of the *First Schedule* in respect of each founder, beneficial owner, significant interest holder, director and officer of the applicant digital asset business.

*[1] Note that where the Applicant is a publicly traded entity in The Bahamas or elsewhere, Form 2s are only required to be provided for significant interests holders of the Applicant.*

## FORM 2

**Personal Questionnaire for Director, Founder, Beneficial Owner, Officer, and Significant Interest Holder for persons registered under Part III of the Act**

**General Instructions:**

If insufficient space is provided, please attach a separate sheet of paper.

***WARNING: Intentional misstatement or failure to disclose information may constitute an offence.***

| A. Personal Details | |
|---|---|
| 1. Name of the registered person (firm, marketplace, etc.) in connection with which this questionnaire is being completed. | |
| 2.   Full legal name of representative: Surname, Given names. | |
| 3. List any previous names of the | |

Digital Assets and Registered Exchanges Bill, 2020                    Schedule

| Applicant. | |
|---|---|
| 4. Indicate role(s) in which representative will be acting | Director: ( )  Founder: ( )<br>Beneficial Owner: ( )  Officer: ( )<br>Significant Security Holder ( ) |
| 5. Home address | Previous Address 1:<br>Date at this Address:<br><br>Previous Address 2:<br>Date at this Address:<br><br>Additional as applicable |
| 6. Previous home addresses during the last ten years (With relevant dates) | |
| 7. Date of Birth Place of birth (including town, state and country) | |
| 8. Citizenship | Bahamas ( )<br>Other ( ), please specify |
| 9. Identification number (Passport No., Number: Voters Registration No., National Identification No., Social Security No., Type: Tax Identification No. or specify other type) | Identification No.:<br>Identification Type: |
| **B. Employment & Education History** | |
| 10. Present occupation or employment including:<br>i. the name and address of the employer<br>ii. the nature of business<br>iii. Title of position held; and<br>iv. relevant start date<br><br>Provide the name, position and telephone number of a reference | |
| 11. Prior occupations and employment during the last ten years, including:<br>i.the name and address of the employer<br>ii. the nature of business<br>iii. Title of position held, and<br>iv. relevant dates (leave no period unaccounted for) | |

| | |
|---|---|
| For each employer, provide the name, position and telephone number of a reference | |
| 12. List companies of which the Applicant (a) Current director or holding significant interest<br>(b) has been a director or significant held significant interest at any time during the last ten years<br><br>(Specify the name of the entity, the country of incorporation, and the nature of business in each case) | (a) Current director or holding significant interest<br>(b) has been a director or significant held a significant interest at any time during the last ten years |
| *Significant interest as defined in section 2 of the Act | |
| 13. Describe the formal education or training the Applicant has in digital asset business (including professional qualifications or degrees and year in which they were obtained). | Please provide evidence of status with any professional membership indicated. |
| 14. Are you or have you ever been a director, officer, held significant interest holder, or been an employee of any other entity registered with the Commission? | No ( )<br><br>Yes ( ) If yes, please provide full details. |
| 15. Have you been licensed or registered to work in a similar capacity in any other jurisdiction? | No ( )<br><br>Yes (   ) (if yes, attach full details, including copy of evidence of such registration or license) |
| **C. Discipline History** | |
| 16. Have you or any person with which you were associated as a director, manager, officer or significant interest holder, in any jurisdiction, been disciplined by any stock exchange, securities regulatory body or professional association or been denied admission, registration or renewal or had a membership or registration revoked? | No ( )<br><br>Yes ( ) (if yes, attach full details) |
| 17. Have you or any person with which | No ( ) |

Digital Assets and Registered Exchanges Bill, 2020 Schedule

| | |
|---|---|
| you were associated as a director, manager, officer or significant interest holder, in any jurisdiction, ever been declared bankrupt, been convicted of a crime or been sued under any commercial law, securities law, companies law or law concerning fraud? | Yes ( ) (if yes, attach full details) |
| 18. Have you at any time been involved with an application for regulatory approval in any jurisdiction where that application has been refused or withdrawn? | No ( )<br>Yes ( ) (if yes, attach full details) |
| 19. Have you, in any jurisdiction, been dismissed from any office or employment or barred from entry to any profession or occupation? | No ( )<br>Yes ( ) (if yes, attach full details) |
| 20. Has any person with which you were associated as a director, manager, officer or significant interest holder, in any jurisdiction been compulsorily wound up or made any arrangement with its creditors or ceased trading in circumstances where its creditors did not receive or have not yet received full settlement of their claims, either while you were associated with it or within one year after you ceased to be associated with it? | No ( )<br>Yes ( ) (if yes, attach full details) |
| 21. In carrying out your duties will you be acting on the directions or instructions of any other person? | No ( )<br>Yes ( ) (if yes, attach full details) |

*"I, the undersigned, hereby affirm that to the best of my information, knowledge and belief the contents of this form and any attachments provided with this form are true, correct and not misleading and that I am in compliance with all the applicable provisions of the Act. I undertake that as long as I continue to be a director, significant interest holder, manager, or officer of the registered person named in item 1, I will*

*i.        Continue to comply with all the applicable provisions of the Act, and*

*ii.       Notify the Commission immediately of any material changes affecting the completeness of the answers to any of the questions above.*

*"I also hereby authorize the Commission to make such enquiries and seek such further information as it thinks appropriate in verifying the information given in this Personal Questionnaire, or in any other documents submitted as part of this application, for the purposes of performing its due diligence and background checks. I understand that the results of these checks may be disclosed to the person who submitted this application."*

| Date: | Signature: |
|-------|------------|

**Other documents to be attached:**

1. A copy of Work Permit or Permanent Residence Permit (for Non-Bahamian citizens).

2. A copy of the applicant's passport.

3. Applicant's current Police Certificate from applicant's home country (not more than three months old) or an affidavit in acceptable form, if the Police Certificate is not available and a current Bahamian police certificate (if residing in The Bahamas), or if not available, an affidavit in acceptable form.

4. Two recent photographs of Applicant, individually signed on the back by the Applicant.

## Form 3

Application for Registration as CEO or Compliance Officer of Digital Asset Business

**General Instructions:**

If insufficient space is provided, please attach a separate sheet of paper.

WARNING: Intentional misstatement or failure to disclose information may constitute an offence.

| A. Personal Details | |
|---------------------|---|
| 1. Name of the registered person (firm, marketplace, etc.) in connection with which this questionnaire is being completed. | |
| 2. Full legal name of representative: Surname, Given names. | |
| 3. List any previous names of the | |

Digital Assets and Registered Exchanges Bill, 2020                    Schedule

| | |
|---|---|
| Applicant. | |
| 4.     Indicate     role(S)     for     which representative is applying | CEOl ( ) Compliance Officer: ( )  Other ( ) |
| 5. Indicate if this is an application for reinstatement of a previous registration | No ( )<br>Yes ( ) (if yes, attach full details) |
| 6. Home address | |
| 7. Previous home addresses during the last ten years (with relevant dates) | Previous Address 1:<br>Date at this Address:<br><br>Previous Address 2:<br>Date at this Address:<br><br>Additional as applicable |
| 8. Date of Birth Place of birth (including town, state and country) | |
| 9. Citizenship | Bahamas ( )<br>Other ( ), please specify: |
| 10. Identification number (Passport No., Number:     Voters     Registration     No., National    Identification    No.,    Social Security No., Type: Tax Identification No. or specify other type_ | Identification No:<br>Identification Type: |
| **B. Employment & Education History** | |
| 11. Present occupation or employment including:<br>i. the name and address of the employer<br><br>ii. the nature of business<br><br>iii. title of position held, and<br><br>iv.  relevant start date<br><br><br>For each employer, provide the name, position & telephone number of a reference | |
| 12. Prior occupations and employment during the last ten years, including: | |

| | |
|---|---|
| i. the name and address of the employer<br><br>ii. the nature of business<br><br>iii. title of position held, and<br><br>iv. relevant dates (leave no period unaccounted for).<br><br><br>For each employer, provide the name, position & telephone number of a reference | |
| 13. List companies of which the Applicant is: (a) Current director or holding significant interest holder<br><br><br> (b) has been a director or significant interest holder at any time during the last ten years<br><br><br>(Specify the name of the entity, the country of incorporation, and the nature of business in each case)<br><br><br>*Significant interest as defined in section 2 of the Bill. | (a) Current director or holding significant interest<br><br><br><br><br><br>(b) has been a director or significant interest holder at any time during the last ten years |
| 14. Describe the formal education or training the applicant has in digital asset business (including professional qualifications or degrees and year in which they were obtained). | Please provide evidence of status with any professional membership indicated. |
| 15. Are you or have you ever been a director, officer, held significant interest holder, or been an employee of any other entity registered with the Commission? | No ( )<br><br><br>Yes ( ) If yes, please provide full details. |
| 16. Have you been licensed or registered to work in a similar capacity in any other | No ( ) |

Digital Assets and Registered Exchanges Bill, 2020                          Schedule

| | |
|---|---|
| jurisdiction? | |
| | Yes ( ) (if yes, attach full details, including copy of evidence of such registration or license) |
| **C. Discipline History** | |
| 17. Have you or any person with which you were associated as a director, manager, officer or significant interest holder, in any jurisdiction, been disciplined by any stock exchange, securities regulatory body or professional association or been denied admission, registration or renewal or had a membership or registration revoked? | No ( )<br><br>Yes ( ) (if yes, attach full details) |
| 18. Have you or any person with which you were associated as a director, manager, officer or significant interest holder, in any jurisdiction, ever been declared bankrupt, been convicted of a crime or been sued under any commercial law, securities law, companies law or law concerning fraud? | No ( )<br><br>Yes ( ) (if yes, attach full details) |
| 19. Have you at any time been involved with an application for regulatory approval in any jurisdiction where that application has been refused or withdrawn? | No ( )<br><br>Yes ( ) (if yes, attach full details) |
| 20. Have you, in any jurisdiction, been dismissed from any office or employment or barred from entry to any profession or occupation? | No ( )<br><br>Yes ( ) (if yes, attach full details) |
| 21. Has any person with which you were associated as a director, manager, officer or significant interest holder, in any jurisdiction been compulsorily wound up or made any arrangement with its creditors or ceased trading in circumstances where its creditors did not receive or have not yet received full settlement of their claims, either while | No ( )<br><br>Yes ( ) (if yes, attach full details) |

| you were associated with it or within one year after you ceased to be associated with it? | |
|---|---|
| 22. In carrying out your duties will you be acting on the directions or instructions of any other person? | No ( )<br><br>Yes ( ) (if yes, attach full details) |

| **Date:** | **Signature of applicant:** |
|---|---|

*"I, the undersigned, hereby affirm that to the best of my information, knowledge and belief the contents of this form and any attachments provided with this form are true, correct and not misleading and that I am in compliance with all the applicable provisions of the Act. I undertake that as long as I continue to be a director, significant interest holder, manager, or officer of the registered person named in item 1, I will*

    i.    *Continue to comply with all the applicable provisions of the Act, and*

    ii.    *Notify the Commission immediately of any material changes affecting the completeness of the answers to any of the questions above.*

*"I also hereby authorize the Commission to make such enquiries and seek such further information as it thinks appropriate in verifying the information given in this Personal Questionnaire, or in any other documents submitted as part of this application, for the purposes of performing its due diligence and background checks. I understand that the results of these checks may be disclosed to the person who submitted this application."*

| Provide Intended Date of Employment of the applicant: | |
|---|---|
| *Notice: The Registered Digital Asset Business is required to give immediate notice to the Commission if the Applicant does not commence employment with the Digital Asset Business on the date above.* | |
| Authorisation from Chief Executive Officer (or equivalent) or Director of Registered Digital Asset Business | |
| **Date** | **Signature:**<br><br>**Title:** |

**Other documents to be attached:**

Digital Assets and Registered Exchanges Bill, 2020                                    Schedule

1.    A copy of Work Permit or Permanent Residence Permit (for Non-Bahamian citizens).

2.    A copy of the relevant pages of the applicant's passport (to include name, date of birth, nationality, signature, expiration date and photograph).

3.    Applicant's current Police Certificate (not more than three months old) or an affidavit in acceptable form, from both applicant's home country and The Bahamas (if currently residing in The Bahamas) if the Police Certificate is not available.

4.    Two recent photographs of Applicant, individually signed on the back by the Applicant.

5.    Copy of any relevant degree, educational courses passed, and professional qualifications.

6.    An application fee to be submitted with this application as prescribed.

## PART B
## Form 1
### (Section 9)

Application by Registered Digital Asset Business, Registered Firm or Financial and Corporate Service Provider to Carry on Digital Asset Business Services

Item 1: Full Name of Applicant:

|  |
|--|
|  |

Item 2: License/ Registration Number:

|  |
|--|
|  |

Item 3 – Current Registration

Indicate the category of business of which the applicant is currently registered, and/or whether the applicant has either a Financial and Corporate Service Providers license or an Investment Funds license:

| | |
|---|---|
| Dealing as agent only, including underwriting | |
| Dealing as agent or principal, including underwriting | |
| Dealing as agent or principal, including underwriting, restricted to CFDs | |
| Arranging deals in securities | |
| Managing securities on a discretionary basis | |
| Advising on securities | |
| Market Place or Clearing Facility | |
| Financial and Corporate Service Provider | |

If a Financial Service or Corporate Service Provider, list the licensed activities:

_____

_____

_____

_____

Item 4 – Types of Digital Asset Business Services

Indicate the type(s) of digital asset business service(s) the Applicant wishes to engage in:

| Digital Asset Business Services | Yes |
|---|---|
| Digital Token Exchange | |
| Provision of exchange between digital assets and fiat currencies | |
| Provision of exchange between one or more forms of digital assets | |
| Transferring of digital assets | |
| | |
| Payment service provider – using digital assets | |
| Digital asset service provider | |
| Participation in and provision of financial services related to an issuer's offer or sale of a digital asset | |
| Other (specify) | |

**Item 5 - Current Regulatory Capital**

    i.    Evidence that the applicant meets its current regulatory capital requirements calculated in accordance with the applicable rules.

    ii.    Evidence of how the applicant will meet the additional regulatory capital required for the Digital Asset Business services it intends to provide.

If the capital does not meet the minimum capital requirement for the proposed activity(s) under the law, the applicant must, prior to approval for the proposed digital asset business, provide evidence to the Commission as to how the applicant will increase its regulatory capital to satisfy the minimum capital requirement.

**Item 6 – Details of Information Security Officer**

For the proposed digital asset business (s), identify the Information Security Officer who will be responsible for overseeing and implementing the registrant's cybersecurity and data protection program. Include names, addresses, relevant experience, qualifications, rank in the organization, etc.

If the Information Security Officer is to be outsourced, provide the name(s), experience and contact information of the person and/or entity that will provide the outsourced service.

**Item 7 – Any Other Relevant Details**

Include any other information relevant to the Commission's consideration of this application.

**Item 8 – Contact Person**

Give the name, business telephone number and email address of a senior official (CEO or equivalent) of the applicant who is knowledgeable about the application and who may be contacted to discuss it.

**Item 9 – Date the Application**

_____

**Item 10 – Certification and Signature**

_____

Include the signature of the Chief Executive Officer and Treasurer certifying the following statement:

"*We, the undersigned, hereby affirm that to the best of our information, knowledge and belief that*

> a.    *the Applicant is currently in compliance with all the applicable provisions of the Securities Industry Act, the Investment Funds Act, 2020, and/or the Financial and Corporate Service Providers Act, 2000 under which they are registered, as well as the Digital Assets and Registered Exchanges Act, 2020; and*
>
> b.    *the contents of this form and any attachments provided with this form are true, correct and not misleading.*"

**WARNING: Intentional misstatement or failure to disclose information may constitute an offence.**

**Required attachments:**

1. Copy of the Applicant's updated and detailed business plan, including financial and operational projections, staffing qualifications and requirements, and technological requirements.

2. A schedule for the proposed fees for the digital asset business services to be rendered.

3. An application fee must be submitted with this application. The appropriate fee can be found in the Fee Rule.

Where the Applicant intends to operate a digital token exchange, in addition to the attachments previously listed, the following must be provided:

4. Rules of the exchange, including rules for admission to listing of digital assets

Digital Assets and Registered Exchanges Bill, 2020                    Schedule

on the exchange.

5. Evidence of the applicant's good standing in accordance with section 277 of the Companies Act (*Ch. 308*).

6. Certified copy of the applicant's Memorandum and Articles of Association, or equivalent constitutive documents.

7. Evidence of the applicant's registration with any other regulatory authority, if applicable.

8. Completed form with respect to each founder, beneficial owner, security holder, director and officer of the applicant's digital asset business.

## PART C

### Form 1
(Section 15)

**Application for Registration of Digital Token Exchange**

**Item 1 -** Name of Applicant
State the full legal name of the Applicant.

**Item 2 -** Type of Application
State what category of digital asset business the Applicant is applying for registration in.

**Item 3 -** Full Business Contact Details of Applicant
State the Applicant's principal business address and provide email addressees), telephone numbers and fax numbers. If the Applicant operates at more than one address in The Bahamas, provide details for each office.

**Item 4 -** Full Details on Security Holders, Directors and Officers, the securities or digital assets of the applicant, securities or digital exchange in any jurisdiction.

Provide completed Form 2 of Part A for each security holder, director and officer of the Applicant.

If the securities of the Applicant are traded on a securities exchange in any jurisdiction, provide full details of the listing.

Provide a list of all affiliates of the Applicant and indicate nature of relationship, business the affiliate is in, where .it is incorporated etc.

**Item 5-** Discipline History
State whether the Applicant or any director, officer or significant security holder of the Applicant has ever been:

(a)   disciplined by any stock exchange, regulatory authority or professional association in any jurisdiction or been denied admission, registration or renewal or had its membership or registration revoked;

(b)   declared bankrupt, been convicted of a crime or been sued under any commercial law, securities law, companies law or law concerning fraud;

(c)   involved with an application for regulatory approval in any jurisdiction where that application has been refused or withdrawn;

(d)    dismissed from any office or employment or barred from entry to any profession or occupation; and

(e)    compulsorily wound up or made any arrangement with its creditors or ceased trading in circumstances where its creditors did not receive or have not yet received full settlement of their claims. If so, please provide full details.

**Item 6** - Operational Capabilities

Provide a detailed description of the Applicant's operational capabilities, including the physical premises, trading system, clearing and settlement systems, security, communication and market surveillance systems, and staff resources, as applicable.

**Item 7** - Policies and Procedures

Provide a summary of the Applicant's written Commission, internal controls and risk management policies and procedures. Attach a complete copy of these policies and procedures.

**Item 8** - Rules

Provide a summary of the Applicant's rules/proposed rules including rules regarding membership, listing, business conduct and clearing and settlement, as applicable. Attach a complete copy of these rules.

**Item 9** - Financial Statements

The following must be submitted:

Where the Applicant has been established within six months of the date of application and the Applicant has not commenced operations:

(a)    a statement from a senior officer of the Applicant confirming that the Applicant has not commenced trading since the date of establishment and that no financial statements have been produced or dividends declared; and

(b)    a statement of financial position, showing the minimum financial resources required as at a date not more than 21 days before the date of the application.

For all other Applicants:

(a)    financial statements for the two financial years immediately prior to the date of the application or, if shorter, since the date of establishment; and

(b)    the most recent interim financial statements certified by the Chief Executive Officer and the Treasurer to be true and complete.

If the Applicant has any significant security holders that are companies, the Applicant must also submit for each such security holder(a) financial statements for the two financial years immediately prior to the date of the application or, if shorter, since the date of establishment; and (b) the most recent interim financial statements certified by the Chief Executive Officer and the Treasurer to be true and complete.

**Item 10** - Proposed Fees
Provide a summary of the proposed fee schedule, including, as applicable, fees for membership, listing, execution of trades, clearing and settlement and any other charges. Attach a copy of the complete schedule.

**Item 11** - Other Regulatory Approvals
If the Applicant is registered, licensed or authorized by any other regulatory authority in The Bahamas or elsewhere, provide details of that status, including the name of the regulatory authority, type of registration, license or authorization, date of approval, registration number, etc.

**Item 12** - Business Plan
Provide a summary of the Applicant's business plan for the next three years, which shall include financial and operational projections, staffing requirements and listing projections, as applicable.

**Item 13** - Contact Person at Applicant
Give the name, business telephone number and email address of a senior official of the Applicant who is knowledgeable about the application and who may be contacted to discuss it.

**Item 14** - Date the Application

**Item 15** - Certification and Signature
Include the signature of the Chief Executive Officer and treasurer certifying the following statement

"We, the undersigned, hereby affirm that to the best of our information, knowledge and belief that:

a. The Applicant is currently in compliance with all the applicable provisions of the Act and these Regulations; and

b. The contents of this form and any attachments provided with this form are true, correct and not misleading."

WARNING: Intentional misstatement or failure to disclose information may constitute an offence.

Required attachments:

I. Copy of the Applicant's written Commission, internal controls and risk management policies and procedures.

2. Evidence of the Applicant's good standing with the Registrar of Companies.

3. Certified copy of the Applicant's Memorandum and Articles of Association, or equivalent incorporation documents.

4. Copies of required financial statements.

5. Copy of the rules of the marketplace or clearing facility, including rules regarding membership, listing, business conduct, and clearing and settlement, as applicable.

6. A schedule of the proposed fees, including fees for membership, listing,execution of trades, clearing and settlement and any other charges.

7. Evidence of the Applicant's registration with any other regulatory authority, if applicable.

8. Copy of the Applicant's detailed business plan for the next three years, including financial and operational projections, staffing requirements and listing projections, as applicable.

9. Completed Form 4s for each security holder, director and officer.

10. Application fee must be submitted with this application.

Schedule                                    Digital Assets and Registered Exchanges Bill, 2020

## PART D

### Form 1

(section 37)

### Application for Registration of Initial Token Offering

| | |
|---|---|
| General Information | |
| Name of the project | |
| Company name | |
| Type of entity | |
| Addresses of the company | |
| Email | |
| Website | |
| Names of the founders (attach CV/background) | |
| Addresses of the project operators | |
| Details of all persons involved: | |
| Founder | |
| Issuer | |
| Token seller | |
| Advisors | |
| Secondary trading participants (platform, ITO organiser, etc.) | |
| Person endorsing | |
| Offering Memorandum | |
| Regulatory licenses held by the Issuer, Founder, advisors and Exchanges (if any) | |
| Project Description | |
| Project name, goals and project plan/timeline-roadmap | |
| Key features of the service to be developed (industry) | |
| Profile of investors i.e. accredited vs nonaccredited | |

Digital Assets and Registered Exchanges Bill, 2020                    Schedule

| | |
|---|---|
| Residence restrictions on investors (US, China, etc.) | |
| Project organization and planning (timing of the various ITO phases milestones, etc.) | |
| Technologies used (DLT, new techno, open source, etc.) | |
| Method of payment accepted: (types of digital assets and currencies) | |
| Projected raise total in fiat currencies and digital assets | |
| Please indicate whether the funds have been allocated to a specific project/operational investment and how will the surplus funds be allocated | |
| Issuance of Digital Asset | |
| Name/symbol of digital asset created | |
| Technological methods and standards for creation (ERC 20 etc) | |
| Wallet IS of the ITO (if already in existence) | |
| At which point by whom an in which manner will the token by transferred to the investors? Price of token during pre/public sale) and price setting mechanism | |
| Which functionalities will be embedded in the token/what will be the uses of the token? | |
| At which point will the functionalities planned apply? | |
| Will a regulated financial intermediary commissioned to meet the AML due diligence requirements? If so, according to which law. | |
| Provide detailed description on the KYC/AML processes applies (PEPs, sanction, high risk industries, etc.) | |

| Transfer and secondary market | |
|---|---|
| Describe how the token be transferred (compatible wallets, technical standards) | |
| Indicate whether the token is already functional at the time of the transfer and, if yes, to what extent | |
| Indicate where the token can be acquired or sold after the issuance (what are the secondary market platforms)? | |
| Will it be possible to use the tokens to buy goods or services or make payments to third parties? | |
| Are there plans for the project operator/issuer to buy back tokens? | |
| Vesting of Digital Assets (Utility Tokens) | |
| How can the token be transferred (Compatible wallets/technical standards)? | |
| Is the token already functional at the time of the transfer? If yes, to what extent? | |
| How and where can the token be acquired or sold after the issuance (what are the secondary market platforms)? | |
| Will it be possible to use the tokens to buy goods or services or make payments to third parties? | |
| Are there plans for the project operator/issuer to buy back tokens? | |

## SECOND SCHEDULE

(Section 34)
### Contents of an Offering Memorandum

Matters to be specified in a offering memorandum of an issuer and requirements for its approval and publication.

General

1. The Securities Commission of The Bahamas has not expressed any opinion of the merits of these digital tokens or determined that this offering memorandum is accurate or complete.  It is illegal for anyone to make any representations in this regard.

2. The offering memorandum shall contain the information which, according to the nature of the issuer and of the digital assets offered to the public, is necessary to enable investors to make an informed assessment of the prospects of the issuer, the proposed project and of the features of the digital asset. This information shall be presented in plain English with no over-reliance on technological terms unless such terms are clearly explained.

3. Certain information specified in this Schedule may be omitted from the offering memorandum if:

    (a) disclosure of such information would be seriously detrimental to the issuer, provided that the omission would not be likely to mislead the public with regard to facts and circumstances essential for an informed assessment of the prospects of the issuer, the proposed project and of the features of the digital assets to which the offering memorandum relates; or

    (b) such information is largely irrelevant and would not taking into account reasonable factors influence an informed assessment of the prospects of the issuer, the proposed project and of the features of the digital assets to which the offering memorandum relates.

4. The offering memorandum shall be drafted in the English language and any additional languages, at the issuer's discretion.

5. The offering memorandum shall include a summary. The summary shall, in brief and in non- technical language, provide key information in relation to the offering. The format and content of the summary of the offering memorandum shall provide, in conjunction with the offering memorandum, appropriate information about essential elements of the digital assets concerned in order to aid investors consideration of whether

to invest in such digital assets. The summary shall also include a warning that:

(a)    it should be read as an introduction to the offering memorandum;

(b)    any decision to invest in the digital assets should be based on consideration of the offering memorandum as a whole by the investor;

(c)    the offering of digital assets does not constitute an offer or solicitation to sell a digital asset which is an asset token that has been has been deemed by the Commission to be a security, and that any such offer of an asset token that is deemed by the Commission to be a security will be made only by means of a prospectus or other offering documentation as provided by the Securities Industry Act;

Specific matters to be included.

5.    The persons responsible for the publication of the offering memorandum;

6.    Names, functions and declarations by the persons responsible for the offering memorandum that:

*"I, the undersigned hereby affirm that to the best of my information knowledge and belief the contents of this form and any attachments provided with this form are true, correct and not misleading."*

7.    Provided that the Commission shall have the power to waive or modify any of the above requirements within the context of a particular initial digital offering on application by the issuer, at least, and to the extent it is applicable, the following information on the offer shall be provided in the offering memorandum:

(a)    description of the purpose for the initial token offering;

(b)    detailed technical description of the protocol, platform and, or application, as the case may be, and the associated benefits;

(c)    detailed description of any secondary platform where the token is either currently or will trade;

(d)    disclosure and description of number and type of token held by each development team member and rights or protocols to receive tokens in the future;

(e)    intended time frame for network to reach maturity;

(f)    disclosure procedure when a team member sells five per centum or more of originally issued tokens;

(g)     detailed description of all intended efforts to create liquidity for subscribers once tokens are sold;

(h)     detailed description of the business' source code and transaction history;

(i)     detailed description of the sustainability and scalability of the proposed project;

(j)     associated challenges and risks as well as mitigating measures related to the issuer's business;

(k)     detailed description of the characteristics and functionality of the digital assets being offered;

(l)     detailed description of the issuer, development team, advisors and any other service providers that may be deployed for the realisation of the project;

(m)    detailed description of the issuer's wallet/s used;

(n)     description of the security safeguards against cyber threats to the underlying protocol, to any off-chain activities and to any wallets used by the issuer;

(o)     detailed description of the life cycle of the initial token offering and the proposed project;

(p)     detailed description of the past and future milestones and project financing;

(q)     detailed description of the targeted investor base;

(r)     exchange rate of the digital assets;

(s)     description of the underlying protocol's interoperability with other protocols;

(t)     description of the manner funds raised through the initial token offering will be allocated;

(u)     the amount and purpose of the issue;

(v)     the total number of digital assets to be issued and their features;

(w)     the distribution of digital assets;

(x)     the consensus algorithm, where applicable;

(y)     incentive mechanism to secure any transactions, transaction and/or any other applicable fees;

(z)     in the case of a new protocol, the estimated speed of transactions;

(aa)    any applicable taxes of the issuer;

(ab)     any set soft cap and hard cap for the offering;

(ac)    the period during which the offer is open;

(ad)    any person underwriting or guaranteeing the offer;

(ae)  any restrictions on the free transferability of digital assets being offered and the DLT platform/s on which they may be traded, to the extent known by the issuer;

(af)  methods of payment;

(ag)  specific notice that investors participating in the initial token offering will be able to get their contribution back if the softcap is not reached at the end of the offering and detailed description of the refund mechanism, including the expected time-line of when such refund will be completed;

(ah)  detailed description of the risks associated with the digital assets and the investment therein;

(ai) the procedure for the exercise of any right of pre-emption;

(aj)  detailed description of the smart contract/s, if any, deployed including *inter alia* the adopted standards, its/their underlying protocol/s, functionality/-ies and associated operational costs;

(ak)  if any smart contract/s is/are deployed by the issuer, details of the auditor who performed an audit on it/them;

(al)  description of any restrictions embedded in the smart contract/s deployed, if any, including *inter alia* any investment and/or geographical restrictions;

(am)  the program agents used to obtain data and verify occurrences from smart contracts (also known as 'oracles') used and detailed description of their characteristics and functionality thereof;

(an)  bonuses applicable to early investors including *inter alia* discounted purchase price for digital financial assets;

(ao)  the period during which voluntary withdrawals are permitted by the smart contract, if any;

(ap)  description of the issuer's adopted white-listing and anti-money laundering and counter financing of terrorism procedures in terms of the Financial Transactions Reporting Act, 2018 *(No. 5 of 2018)* and the Anti-Terrorism Act, 2018;

(aq)  intellectual property rights associated with the offering and protection thereof; and

(ar)  the methods of and time-limits for delivery of the digital assets.

Digital Assets and Registered Exchanges Bill, 2020                                      Schedule

Details of the issuer

8.      The following details of the issuer:-    Name;

Registered address and registration number; Date of registration;

The issuer's object(s);

Where applicable, the group of undertakings to which the issuer belongs;

Disclose at least the following information of any security holder who beneficially owns 10% or more of any class of shares of the issuer —

(a)      name of the holder;

(b)      class and number of any securities held;

(c)      nationality or jurisdiction of incorporation or registration ; and

9.      Where securities are held under a nominee name or trustee arrangement, state that fact and —

(a)      the issuer's principal activities; and

(b)      description of the issuer's principal activities including the disclosure of any legal proceedings having an important effect on the issuer's financial position.

The issuer's operators

10.     Names, addresses and functions of operators.

Benefits for third parties and other expenditure

11.     The amount or estimated amount of preliminary expenses and the persons by whom any of those expenses have been paid or are payable, and the amount or estimated amount of the expenses of the issue and the persons by whom any of those expenses have been paid or are payable.

12.     Any amount or benefit intended to be paid or given to any person endorsing the offering, and the consideration for the payment or the giving of the benefit.

Issuer's financial track record

13.   Where the issuer has been established for any  period not exceeding three years, details of its financial track record for the period from the date the issuer was registered or established, otherwise, where the issuer has been established for a period of three years or more, annual financial statements shall be produced.

Validity of a Offering memorandum, Arrangements for Approval and Publication of an Offering memorandum

14.   A offering memorandum shall be valid for 6 months after its approval for offers to the public.

15.   (1) Significant new factors, material mistakes or inaccuracies

(1)   Every material change, material mistake or inaccuracy relating to the information included in the offering memorandum which is reasonably capable of affecting the assessment of the digital assets and which arises or is noted between the time when the offering memorandum is approved and the final closing of the offer to the public, whichever occurs later, shall be mentioned in a supplement appended to the offering memorandum. Such a supplement shall be approved in the same way and published in accordance with at least the same arrangements as were applied when the original offering memorandum was published. The summary, and any translations thereof, shall also be supplemented, if necessary, to take into account the new information included in the supplement.

(2)   Investors who have already agreed to purchase or subscribe for the digital assets before the supplement is published shall have the right to withdraw their acceptance within two working days after the publication of the supplement, provided that the material change, mistake or inaccuracy referred to in paragraph (1) arose before the final closing of the offer to the public and the delivery of the digital assets. That period may be extended by the issuer in which case the smart contract, if any, shall be updated accordingly. The final date of the right of withdrawal shall be stated in the supplement.

# THIRD SCHEDULE

(section 49)

**Fee Schedule**

### A.    Fees for persons registered under Part III (Digital Asset Businesses)

|  | Fee Type | | |
|---|---|---|---|
| Category of Registration | Application Fee | Registration Fee | Annual Renewal Fee |
| a.   Digital   Token Exchange | $2,000.00 | $20,000.00 | $2,000.00 |
| b. All other digital asset businesses | $500.00 | $3,000.00 | $1,000.00 |

### B.    Table of Fees for the registration of natural persons

| Category of Registration | Application Fee |
|---|---|
| a. Chief Executive Officer | $250.00 |
| b. Compliance Officer | $250.00 |

### C. Filing Fees for person registered under Part IV (Initial Token Offerings)

| Description | Filing Fee |
|---|---|
| a. Filing of an Offering Memorandum (Application fee) | $6.000.00 |
| b. Filing of Interim Financial Statements | No Fee (if filed within prescribed time period) |
| x. Filing of Audited Financial Statements | No fee (if filed within prescribed time period) |

### D. Administrative Fees

| | |
|---|---|
| a. Appointment or change in directors | $300.00 |
| b. Approval of issue, transfer, disposal or re-categorization of digital assets | $300.00 |
| c. Letters of Good Standing | $200.00 |
| d. Replacement Certificates | $200.00 |

| | |
|---|---|
| e. Name Change | $200.00 |
| f. Extension to file interim statements for a 3-month period (for a maximum of 2 extension requests) | $100.00 |
| g. Extension to file audited statements for a 3-month period (for a maximum of 2 extension requests) | $500.00 |
| h. Surrender of Registration Certificate | $200.00 |

**E. Late Fees (Annual Renewal)**

| Description | Late Fee |
|---|---|
| Late payment of annual renewal fee | 1 ½ of the amount of annual fee payable for each month the payment remains outstanding |

## FOURTH SCHEDULE

(section 10)

### Notice of Change of Information

### Person Registered under the Digital Assets and Registered Exchanges Activities

### Item 1 - Name

State full legal name of the person registered or licensed under the Act.

### Item 2 - Full Business Contact Details

State the person's principal business address and provide email address(es), telephone numbers and fax numbers.

### Item 3 - Category of Registration

State the person's category or categories of registration or license held under the Act.

### Item 4 – Full Details of Changes Giving Rise to Notice

Information on Application Form: Attached and marked as an exhibit to this notice is a statement of particulars of any change to any information set out in the person's application to the Commission for registration or licensing, including any claims or changes to the registrant's or licensee's insurance coverage.

### Item 5 - Contact Person

Give the name, business telephone number and email address of a senior official of the registered or licensed person who is knowledgeable about the notice and who may be contacted to discuss it.

### Item 6 - Date the Notice

### Item 7 - Certification and Signature

Include the signature of a senior officer certifying the following statement-

*"I, the undersigned, hereby affirm that to the best of my information, knowledge and belief the contents of this form and any attachments provided with this form are true, correct and not misleading."*

***WARNING: Intentional misstatement or failure to disclose information may constitute an offence.***

# FIFTH SCHEDULE

## (section 53)

| Act | Amendment |
|---|---|
| Financial Transactions and Reporting Act, 2018 *(No. 5 of 2018)* | The Financial Transactios and Reporting Act, 2018 (*No. 5 of 2018*) is amended –<br><br>(a)  in section 2 by the insertion in the appropriate alphabetical order of the following —<br><br>"**digital asset**" has the same meaning assigned to it in the Digital Assets and Registered Exchanges Act, 2020;<br><br>"**digital asset business**" has the same meaning as assigned in the Digital Assets and Registered Exchanges Act, 2020;"<br><br>(b)  in section 3(l) —<br><br>(i)  by the deletion of paragraph (l) and the substitution of the following —<br><br>"(l)  a digital asset business for the purpose of monitoring and risk assessment; and<br><br>(m)  any other category of institutions that the Minister may by order designate.". |

| | |
|---|---|
| Proceeds of Crime Act, 2018 *(No. 4 of 2018)* | The Proceeds of Crime Act is amended in section 2 —<br><br>(a)  by the insertion in the appropriate alphabetical order of the following —<br><br>"**digital asset**" has the same meaning as assigned in the Digital Assets and Registered Exchanges Act, 2020;<br><br>"**digital asset business**" has the same meaning as assigned in the Digital Assets and Registered Exchanges Act, 2020;" and<br><br>(b)  by the deletion and substitution of the term "identified risk" as follows —<br><br>"**identified risk**" means a risk associated with —<br><br>(a)  corruption;<br>(b)  cybercrime;<br>(c)  human trafficking;<br>(d)  money laundering;<br>(e)  financing of proliferation of weapons of mass destruction;<br>(f)  terrorism;<br>(g)  financing of terrorism;<br>(h)  digital assets and digital asset businesses for the purpose of |

Schedule                          Digital Assets and Registered Exchanges Bill, 2020

| | monitoring and risk assessment; and |
| | (i)    any other risk as the Minister may prescribe by  regulations;". |

Digital Assets and Registered Exchanges Bill, 2020                         Schedule

## OBJECTS AND REASONS