Warren E. Gluck, Esq.
Marie E. Larsen, Esq.
David W. Wirt (*Pro Hac Vice* Pending)
Jessica Magee (*Pro Hac Vice* Pending)
Shardul Desai (*Pro Hac Vice* Pending)
HOLLAND & KNIGHT LLP
31 W. 52nd Street
New York, NY 10019
Telephone:  212-513-3200
Fax: 212-385-9010
Warren.Gluck@hklaw.com
Marie.Larsen@hklaw.com
David.Wirt@hklaw.com
Jessica.Magee@hklaw.com
Shardul.Desai@hklaw.com

*Counsel for the Joint Provisional Liquidators of FTX
Digital Markets Ltd. (in Provisional Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

| | | |
|---|---|---|
| | : | Chapter 15 |
| In re: | : | |
| | : | Case No. 22- 11516 (MEW) |
| FTX DIGITAL MARKETS LTD. (in | : | |
| Provisional Liquidation) | : | |
| | : | |
| Debtor in a | : | |
| Foreign | : | |
| Proceeding.[1] | : | |
| | : | |

---------------------------------------------------------

## EMERGENCY MOTION FOR PROVISIONAL RELIEF PURSUANT TO 11 U.S.C. §§ 105(A), 1519, AND 1521

Brian C. Simms, Kevin G Cambridge, and Peter Greaves ("**Joint Provisional
Liquidators**"), in their capacity as the duly appointed joint provisional liquidators and foreign
representatives of FTX Digital Markets Ltd. ("**FTX Digital**" or the "**Debtor**"), the Debtor in the

---

[1] FTX Digital Markets Ltd. (in Provisional Liquidation) was incorporated in the Commonwealth of The Bahamas as
an International Business Company, registered number 207269B.

1

above-captioned Chapter 15 proceeding with respect to a provisional liquidation in the Commonwealth of The Bahamas (the "**Bahamian Liquidation**") pursuant to the Companies (Winding Up Amendment) Act 2011 (the "**CWUA Act**"), by his undersigned United States counsel, Holland & Knight LLP, respectfully submits this motion (the "**Motion**"), seeking entry of an Order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") granting provisional discovery authority and related relief pursuant to sections 105(a), 1519(a)(1) through (3), and 1521(a)(3) and (4) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**").   In support of this Motion, the Joint Provisional Liquidators have contemporaneously filed, and hereby incorporate by reference, the Official Form Petition commencing the above-captioned Chapter 15 proceeding (the "**Chapter 15 Case**"), the Verified Petition and exhibits thereto (together with the Official Form Petition, the "**Petition**"), and the accompanying Declarations of Brian C. Simms executed on November 15, 2022 (the "**Simms Declaration**"),  the Declaration of Sophia T. Rolle-Kapousouzoglou, dated November 15, 2022 (the "**STR Declaration**"), and the supplemental declaration of Brian C. Simms executed on November 16, 2022 (the "**Simms Supplemental  Declaration**" and, together with the Simms Declaration and the STR Declaration, the "**Declarations**").   Through the Petition, the Joint Provisional Liquidators are seeking entry of an Order pursuant to Chapter 15 the Bankruptcy Code: (i) recognizing the Bahamian Liquidation as a foreign main proceeding pursuant to Chapter 15 of the Bankruptcy Code and the Joint Provisional Liquidators as FTX Digital's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; (ii) granting automatic relief pursuant to section 1520 of the Bankruptcy Code; and (iii) granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code.   Through this Motion, the Joint Provisional Liquidators seek entry of an order granting provisional relief to prevent

2

irreparable harm to FTX Digital and the Bahamian Liquidation pending recognition pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code in the form of an order provisionally (i) granting immediate rights to obtain discovery through the examination of witnesses, taking of evidence or the delivery of information regarding the Debtor's assets, affairs, rights, obligations and/or liabilities from persons and entities in the United States pursuant to 11 U.S.C. § 1521(a)(4) so long as it does not conflict with the present stay in relation to *FTX Trading Ltd.,* Case No. 22-11068 (JTD) (Bankr. D. Del.) et al; (ii) staying all persons and entities from executing against FTX Digital's assets pursuant to 11 U.S.C. § 1521(a)(2); (iii) staying all persons and entities from transferring, encumbering or otherwise disposing of any assets of FTX Digital pursuant to 11 U.S.C. § 1521(a)(3); and (iv) authorizing the Joint Provisional Liquidators, pursuant to 11 U.S.C. § 1521(a)(5), to act as the foreign representatives of FTX Digital and to appear, act and be heard in that capacity in all courts in the territorial jurisdiction of the United States, including state, federal and bankruptcy courts.  In further support of this Motion, the Joint Provisional Liquidators state as follows:

## PRELIMINARY STATEMENT

1.    On November 10, 2022, the Securities Commission of The Bahamas (the "**Commission**") filed a petition ("**The Bahamas Petition**") in the Bahamas Supreme Court (the "**Bahamas Court**") for an Order that FTX Digital be wound up because (1) it was insolvent according to the CWUA Act, (2) The Bahamas Commission suspended its license, and (3) it was in breach of its duties under the DARE Act.

2.    On November 10, 2022, a hearing took place in the Bahamas Court and his Lordship, the Honourable Mr. Chief Justice Ian Winder heard The Bahamas Petition.  Upon due consideration Lord Winder issued an order directing that FTX Digital be placed into provisional

3

liquidation and appointing Brian C. Simms, Kevin G Cambridge, and Peter Greaves as Joint Provisional Liquidators of FTX Digital.

3.      The Joint Provisional Liquidators believe that Debtor's assets are at serious risk of execution, attachment and other forms of stay violation and seek, by the Motion, to provisionally prevent the same, as well as the ability to obtain information concerning the status of the Debtor's assets and, as necessary, appear in United States courts during the interim period.

4.      However, absent the grant of the Motion, creditors in the United States will have the unfettered ability to execute on the Debtor's assets, transfers of the Debtor's assets can continue, and the Joint Provisional Liquidators will be unable to obtain information concerning the nature and extent of the Debtor's assets until the Court grants recognition of the Petition, endangering the value of the Debtor's assets in the interim.

5.      Accordingly, the Joint Provisional Liquidators now seek certain provisional relief between the date hereof and this Court's entry of the proposed order recognizing the Bahamian Liquidation as a "foreign main proceeding" within the meaning of section 1517 of the Bankruptcy Code.  Among other things, the Joint Provisional Liquidators request that this Court immediately stay execution against the Debtor's assets; suspend the right to transfer, encumber or otherwise dispose of any assets of the Debtor; entrust the administration or realization of all or part of the Debtor's assets located in the United States to the Joint Provisional Liquidators as foreign representatives; and authorize urgent discovery measures pursuant to 11 U.S.C. 1521(a)(4).

6.      Without the relief requested herein, the Debtor will be faced with the prospect of a significant disruption to the Bahamian Liquidation, including the infliction of irreparable harm upon the Debtor.  Chapter 15 of the Bankruptcy Code is intended to prevent precisely this negative

effect on a foreign debtor's insolvency proceedings and to complement and facilitate corporate rehabilitations in a foreign debtor's home country.

7.        Therefore, and for reasons further described herein and in the Declarations, the Joint Provisional Liquidators respectfully submit that provisional relief is urgently needed.

## JURISDICTION AND VENUE

8.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by this Court in connection with the Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.        This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Bahamian Liquidation under section 1515 of the Bankruptcy Code.

10.        Venue is proper in this District pursuant to 28 U.S.C. § 1410(3) because the Debtor holds property within the United States and within this District.

11.        The statutory bases for relief are sections 105(a), 1519(a)(3), and 1521(a)(2), (3), (4) and (5) of the Bankruptcy Code, Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

#180485918_v5

## BACKGROUND

A.    **The Debtor's Structure and Activities**

12.    FTX digital asset exchange was founded in May 2019 by Samuel Benjamin Bankman-Fried ("**SBF**"), and this digital asset exchange was incorporated as FTX Digital in the Commonwealth of The Bahamas on July 22, 2021 as an International Business Company, with registration number 207269B.  [Simms Declaration ¶¶ 26, 27, 28].  The principal address and office for FTX Digital is Building 27, Veridian Corporate Centre West Bay Street, Nassau, N.P. [Simms Declaration ¶ 28].  SBF was the founder and controlling owner of the FTX network of companies that established the FTX Brand (the "**FTX Brand**"), which were managed and operated by FTX Digital in The Bahamas.  [Simms Declaration ¶ 33].  The FTX Brand includes FTX Digital, Alameda Research Ltd. ("**Alameda**"), FTX Trading Ltd. ("**FTX Trading**"), and West Realm Services, Inc., d/b/a FTX US ("**FTX US**").  [Simms Declaration ¶¶ 33, 34, 35, 36].  The FTX Brand and operations were physically located in The Bahamas.  [Simms Declaration ¶ 37]. The power to transfer the digital assets held by the FTX exchange is centralized in The Bahamas, and the possessory, custodial, control and equitable property interests in all FTX Brand property is maintained by FTX Digital in the Bahamas.  [Simms Declaration ¶ 43].

13.    FTX Digital is registered as a digital asset business under the Digital Assets and Registered Exchanges Act, 2020 (the "**DARE Act**").  Under the DARE Act, FTX Digital is registered to provide: (i) an exchange between digital assets and fiat currency and (ii) an exchange between one or more forms of digital assets.  [Simms Declaration ¶ 29].

14.    Digital assets generally include cryptocurrency such as Bitcoin (BTC) and are generally regarded as property and are transacted on digital ledgers known as a blockchain.  They have unique features but those features can, depending on their design, include attributes of bearer instruments, attributes of dematerialized securities traded in the capital markets and attributes of

cash (fiat currency).  Control over those sorts of digital assets is at base dependent upon control over the relevant "private key" (akin to a password or PIN).  To the extent that a person has control over the relevant private key (a unique alpha-numeric code), that person can conduct final, irreversible, immutable, and absolute transactions of the digital assets secured by that private key. [Simms Declaration ¶ 18].

15.     A digital asset exchange allows customers to convert fiat currency to digital assets, to store digital assets within wallets provided by the exchange, and to exchange between one or more forms of digital assets. [Simms Declaration ¶ 23].

16.     Commercial exchanges often store their customers' digital assets in pooled wallets, wherein the customer does not have control over the pooled wallet's private key; rather, the customer's assets are recorded on internal ledgers of the exchange, which are external to the blockchain.  In these circumstances, customers can conduct transactions only via requests to the commercial exchange.  [Simms Declaration ¶ 24].

17.     FTX Digital operated a digital asset exchange, which offered functionality similar to traditional brokerage accounts.  Digital asset exchanges typically generate revenue by collecting a fee for each trade they facilitate, but many also engage in trading (or other commercial use of) cryptocurrency that is transferred to them by customers.  [Simms Declaration ¶ 30].

18.     The FTX platform also appears to have offered customers the ability to take various leveraged or derivative positions, such as margin trading (loans), futures, options, and volatility products, as well as the ability for one customer to buy or sell directly from another — serving customers outside of the United States, Japan, Bahamas, Australia, and Singapore. [Simms Declaration ¶ 31].

#180485918_v5

19.     In addition, the owners and operators of FTX Digital created their own digital asset called the FTX Token ("**FTT**").  This token allowed FTX Digital users to obtain discounts on trading fees, collateralize their futures positions, and benefit from other exchange-centric uses. [Simms Declaration ¶ 32].

## B.    Management Misconduct.

20.     The Joint Provisional Liquidators' findings to date indicate that serious fraud and mismanagement may have been committed with respect to FTX Digital and the FTX Affiliates (as defined below).

21.     In May and June of 2022, according to news reports, Alameda suffered severe losses from a number of deals it was engaged in, including a $500 million loan that defaulted.[2] New York Times reporting contends that SBF was heavily involved in the decision-making for all of Alameda's "big trades."[3] [Simms Declaration ¶ 45].

22.     At or around this time, the Wall Street Journal reported that the FTX Brand's management misused customer deposits on the FTX digital asset exchange to extend undisclosed loans to Alameda.   Essentially, the allegation is that FTX Brand management misused cryptocurrency that had been credited to customers' accounts on the FTX cryptocurrency exchange to extend undisclosed loans to Alameda.  According to the report, one observer indicated that Alameda used this cryptocurrency exchange to extend undisclosed loans to Alameda.  Allegedly, FTX had $16 billion in crypto assets at that time; thus, more than half of the amounts standing to

---

[2] https://www.reuters.com/technology/exclusive-behind-ftxs-fall-battling-billionaires-failed-bid-save-crypto-2022-11-10/.

[3] https://www.nytimes.com/2022/11/11/business/ftx-bankruptcy.html; https://fortune.com/2022/11/11/sam-bankman-fried-crypto-empire-ftx-alameda-run-gang-kids-bahamas-who-all-dated-each-other/.

#180485918_v5

the credit of customer accounts on the FTX cryptocurrency exchange were misappropriated to finance Alameda's unsuccessful trades.[4]  [Simms Declaration ¶ 49].

23.    On or about November 2, 2022, Alameda's balance sheet was leaked on the Internet.  This balance sheet showed that much of the company's $14.6 billion in assets were held in FTT, the digital asset created by the FTX Brand and used for benefits on its platform.[5]  [Simms Declaration 46].

24.    On November 6, 2022, Binance Holdings Ltd's ("**Binance**") CEO tweeted that "[a]s part of Binance's exit from FTX equity last year, Binance received roughly $2.1 billion USD equivalent in cash (BUD and FTT).  Due to recent _revelations_ that have came [sic] to light, we have decided to liquidate any remaining FTT on our books."  The impact of the announcement was swift; in 24 hours, more than $5 billion of withdrawal requests were made on the various FTX Brand's exchange platforms.  [Simms Declaration ¶ 47].

25.    On the same date, SBF seemingly responded tweeting: "a bunch of unfounded rumors have been circulating. FTX keeps audited financials etc. . . . ."  And, FTX Digital "has enough to cover all client holdings. We don't invest client assets (even in treasuries). We have been processing all withdrawals, and will continue to be."  SBF has since deleted this tweet. [Simms Declaration ¶ 48].

26.    At or around this time, SBF reportedly admitted that Alameda owes FTX about $10 billion - essentially confirming that FTX Brand's management misused customer deposits on the FTX digital asset exchange to extend undisclosed loans to Alameda.  [Simms Declaration ¶ 49].

---

[4] https://www.wsj.com/articles/ftx-tapped-into-customer-accounts-to-fund-risky-bets-setting-up-its-downfall-11668093732.
[5] https://www.wsj.com/articles/binance-is-said-to-be-likely-to-walk-away-from-deal-to-buy-ftx-11668020963; https://www.reuters.com/technology/exclusive-behind-ftxs-fall-battling-billionaires-failed-bid-save-crypto-2022-11-10/.

#180485918_v5

Alameda used these customer deposits for trading purposes, and suffered further losses. *Id.* According to the *Wall Street Journal*, FTX had $16 billion in customer deposits at this time, indicating that more than half of the customer deposits appeared to have been misappropriated to finance Alameda's unsuccessful trades.[6]

27.    According to a Reuters report dated November 9, 2022, SBF issued an apology to all FTX employees via an internal messaging application that stated: "I'm deeply sorry that we got into this place, and for my role in it. That's on me, and me alone, and it sucks, and I'm sorry, not that that it makes it any better."[7] [Simms Declaration ¶ 53]. That same day, the Wall Street Journal reported that Alameda CEO Caroline Ellison—joined by SBF and two other members of FTX Digital's management team (Nishad Singh, Director of Engineering, and Gary Wang, Co-Founder & Chief Technology Officer)—told Alameda employees that they were aware of the decision to send customer funds to Alameda. Specifically, according to the report, Ms. Ellison stated that "FTX used customer money to help Alameda meet its liabilities.[8] [Simms Declaration ¶ 54].

**C.    Actions by Regulators.**

28.    On November 10, 2022, the Commission suspended FTX Digital's license to conduct business, froze the assets of FTX Digital and commenced regulatory proceedings. [Simms Declaration ¶ 10]. On that date, the Commission filed the Bahamas Petition in the Bahamas Court for an Order that FTX Digital be wound up because (1) it was insolvent according to the CWUA Act, (2) The Bahamas Commission suspended its license, and (3) it was in breach of its duties under the DARE Act. *Id.*

---

[6]https://www.wsj.com/articles/ftx-tapped-into-customer-accounts-to-fund-risky-bets-setting-up-its-downfall-11668093732

[7] https://www.reuters.com/markets/currencies/ftx-turmoil-causes-crypto-concern-sending-token-prices-sliding-2022-11-09/

[8]https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238?mod=latest_headlines

#180485918_v5

29.     On November 10, 2022, a hearing took place in the Bahamas Court and the Bahamas Court issued an order directing that FTX Digital be placed into provisional liquidation and appointed Brian C. Simms as Joint Provisional Liquidator over FTX Digital (the "**Provisional Liquidation Order**").  The Provisional Liquidation Order divests FTX Digital's directors to act or exercise any functions for or on behalf of FTX Digital unless expressly instructed to do so by the Joint Provisional Liquidators in writing.  On November 14, 2022, the Bahamian Court appointed Brian C. Simms, Kevin G Cambridge, and Peter Greaves as Joint Provisional Liquidators.  [Simms Declaration ¶ 16].

30.     The Provisional Liquidation Order directs, authorizes and empowers the Joint Provisional Liquidators to take any and all necessary steps to protect the assets of FTX Digital wherever situated, including any assets held in trust by FTX Digital, including the filing of a chapter 15 Petition and this Provisional Relief Application for the purposes of protecting, collecting and accessing the assets of FTX Digital.  [Simms Declaration ¶ 13].

31.     On November 11, 2022, FTX Trading Ltd. ("**FTX Trading**")[9] and 134 other affiliates and subsidiaries ("**FTX Affiliates**"), purported to file a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (the "**Delaware Bankruptcy Petition**").  [Simms Declaration ¶ 14].  Notably, FTX Digital did not file for relief as a debtor under the Delaware Bankruptcy Petition.  As of the date of the Delaware Bankruptcy Petition, no person other than the Joint Provisional Liquidators were authorized to take any act, including but not limited to the filing of the Delaware Bankruptcy Petition, in respect of FTX Digital and FTX Digital's subsidiaries to the extent such

---

[9] FTX Trading is a company incorporated in Antigua and Barbuda.

#180485918_v5

filing required FTX Digital's directors and management to approve and authorize the same. [Simms Declaration ¶ 15].

## **RELIEF REQUESTED**

32.     The Joint Provisional Liquidators urgently need to secure and protect the Debtor's assets and to obtain accurate information in order to identify all of the Debtor's assets and potential claims.  Further, the Joint Provisional Liquidators need to be in a position to appear and be heard in pending judicial proceedings, including proceedings conducted in connection with the Delaware Bankruptcy Petition.  By this Motion, the Joint Provisional Liquidators respectfully request that this Court, pursuant to sections 105(a), 1519(a)(3), and 1521(a)(2), (3), (4) and (5) of the Bankruptcy Code, enter an order substantially in the form of the Proposed Order, (i) staying execution against FTX Digital's assets; (ii) suspending the right to transfer, encumber or otherwise dispose of any assets of FTX Digital; (iii) entrusting the administration or realization of all or part of FTX Digital's assets located in the United States to the Joint Provisional Liquidators as foreign representatives so long as it does not conflict with the stay currently in effect in *FTX Trading Ltd.,* Case No. 22-11068 (JTD) (Bankr. D. Del.) et al; (iv) authorizing urgent discovery measures pursuant to 11 U.S.C. 1521(a)(4) so long as it does not conflict with the stay currently in effect in *FTX Trading Ltd.,* Case No. 22-11068 (JTD) (Bankr. D. Del.) et al; and (v) authorizing the Joint Provisional Liquidators to appear and be heard on the Debtor's behalf until the Court rules on the Petition.

## **BASIS FOR RELIEF**

33.     Pursuant to section 1517 of the Bankruptcy Code, an order recognizing a foreign proceeding may only be entered after notice and a hearing.  11 U.S.C. § 1517(a).  Pursuant to Bankruptcy Rule 2002(q), the notice period must be at least twenty-one (21) days. Fed. R. Bankr. P. 2002(q).  However, pending an order recognizing a foreign proceeding, section 1519 of the

#180485918_v5

Bankruptcy Code authorizes the Court to grant certain relief to the proposed foreign representative on a provisional basis. Specifically, section 1519(a) of the Bankruptcy Code provides:

> From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including-
>
> > (1) staying execution against the debtor's assets;
> >
> > (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
> >
> > (3) any relief referred to in paragraph (3), [or] (4) . . . of section 1521(a).

11 U.S.C. § 1519(a). Section 1521(a)(3) allows the court to "suspend[] the right to transfer, encumber or otherwise dispose of any assets of the debtor." 11 U.S.C. § 1521(a)(3). Section 1521(a)(4) authorizes the Court to "provide for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521(a)(4).

## I.    Provisional Relief is Within the Scope of Section 1519 and is Necessary and Appropriate Under the Circumstances.

34.    As discussed, section 1519 of the Bankruptcy Code permits a foreign representative to request that this Court provide certain provisional relief to foreign debtors, including the relief the Joint Provisional Liquidators currently seek, pending a ruling on the Petition. Courts grant such relief where it is "urgently needed" to protect the foreign debtor's assets in the United States. *See* 11 U.S.C. §1519(a).

35.    Various forms of provisional relief are frequently granted to foreign representatives pending a hearing on recognition of a foreign proceeding. *See, e.g.*, *In re Imperial Tobacco Canada Ltd.*, No. 19-10771(SCC) Dkt. Nos. 14, 22 (Bankr. S.D.N.Y. Mar. 14, 2019 & Mar. 25, 2019); *In*

13

*re Mood Media Corp.*, No. 17-11413(MEW) Dkt. No. 21 (Bankr. S.D.N.Y. May 24, 2017); *In re*

*Karhoo Inc.*, No. 16-13545 (MKV), Dkt. No. 20 (Bankr. S.D.N.Y. Dec. 22, 2016); *In re Grupo*

*Isolux Corsan, S.A.*, No. 16-12202 (SHL), Dkt. Nos. 21, 22 (Bankr. S.D.N.Y. Aug. 3, 2016); *In re*

*Oi S.A.*, No. 16-11791 (SHL), Dkt. No. 22 (Bankr. S.D.N.Y. June 22, 2016).  Indeed, the relief

requested on a provisional basis herein is exactly the type of relief envisioned by sections 1519(a)

and 1521(a)(3) and (4), and Courts within this district have previously granted requests for

provisional relief akin to that requested herein based on similarly exigent circumstances. *See, e.g.,*

*In re China Hosps., Inc.*, Case No. 19-13767 (SCC), Dkt. No. 14 (Bankr. S.D.N.Y. Nov. 25, 2019)

(granting provisional relief under section 1519(a), including pursuant to sections 1521(a)(3) and

an (4)); *In re Cinque Terre Fin. Grp. Ltd.*, Case No. 16-11086-jlg, Dkt. No. 9 (Bankr. S.D.N.Y.

Apr. 29, 2016) (granting provisional relief to authorize foreign liquidator conduct expedited

discovery); *In re Cinque Terre Fin. Grp. Ltd.*, Case No. 16-11086-jlg, Dkt. No. 47 (Bankr.

S.D.N.Y. May 16, 2016) (enjoining further transfer of debtor-assets and authorizing expedited

discovery); *In re Farenco Shipping Co. Ltd.*, Case No. 11-14138(REG), Dkt. No. 8 (Bankr.

S.D.N.Y. Sept. 7, 2011) (granting the enumerated provisional relief under section 1519(a) and

authorizing expedited discovery under section 1521(a)(4)).

36.    For the reasons stated herein, the Debtor will be subjected to further serious harm

to the detriment of its stakeholders if this Court does not grant the relief requested. [Simms

Supplemental Declaration ¶ 13].  Thus, an immediate, provisional order (i) staying execution

against the Debtor's assets; (ii) entrusting the Joint Provisional Liquidators with the administration

or realization of the Debtor's assets; (iii) suspending the right to transfer, encumber or otherwise

dispose of the Debtor's assets unless authorized by the Joint Provisional Liquidators; (iv) granting

discovery authority to the Joint Provisional Liquidators; and (v) authorizing the Joint Provisional

#180485918_v5

Liquidators to appear and be heard on behalf of the Debtor pending a ruling on the Petition is "urgently needed" to protect the Debtor and its assets until the date on which this Court enters the recognition order.

## II.  Provisional Relief is Consistent with the Public Interest and is Necessary to Prevent Irreparable Harm.

37.    Establishing that the debtor meets the applicable standards for injunction is a threshold requirement for the granting of provisional relief under chapter 15. *See* 11 U.S.C. § 1519(e); *In re SPhinX, Ltd.*, 351 B.R. 103, 111 n.8 (Bankr. S.D.N.Y. 2006) ("Section 1519 of the Code provides that the bankruptcy court may grant provisional relief, under the standards, procedures and limitations applicable to an injunction . . . ."). Under Second Circuit precedent, a preliminary injunction should be issued if the following elements are satisfied: (1) there is a likelihood of success on the merits, (2) there is an imminent irreparable harm to the debtors' assets in the absence of an injunction, (3) the balance of harms tips in favor of the moving party, and (4) the public interest weighs in favor of an injunction. *See In re Lyondell Chem. Co.*, 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (citing *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*. 354 B.R. 45 (Bankr. S.D.N.Y. 2006), aff'd 365 B.R. 401 (S.D.N.Y. 2007)). In evaluating these factors, courts take a "flexible approach and no one factor is determinative." *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007). The Joint Provisional Liquidators respectfully submit that each of these four elements is easily satisfied here.

### A.  There is a Substantial Likelihood of Recognition of the Bahamian Liquidation as a Foreign Main Proceeding and Application of the Requested Relief.

38.    The Joint Provisional Liquidators' request for recognition of the Bahamian Liquidation is likely to succeed because, as set forth in greater detail in the Petition and the Declarations, recognition of the Bahamian Liquidation as a foreign main proceeding is warranted and proper because (i) the Bahamian Liquidation is a foreign main proceeding pursuant to sections

15

101(23) and 1502(4) of the Bankruptcy Code, (ii) the Joint Provisional Liquidators are the authorized foreign representatives of the Debtor within the meaning of section 101(24) of the Bankruptcy Code, and (iii) the Petition was properly filed in accordance with section 1515 of the Bankruptcy Code, together with all required fees, documents and supporting information required under the Bankruptcy Code and applicable Bankruptcy Rules.

39.     The Debtor has a substantial likelihood of obtaining recognition of the Bahamian Liquidation as foreign main proceeding and obtaining the relief requested provisionally herein on a final basis upon recognition, and accordingly, this factor is satisfied.

**B.      Absent the Requested Provisional Relief, the Debtor Will Suffer Irreparable Harm.**

40.     Granting the requested provisional relief is essential to prevent irreparable damage to the Bahamian Liquidation.  The provisional relief requested herein is necessary on an immediate basis to protect against potential interference with the Joint Provisional Liquidators' efforts to realize value from such assets.  [Simms Supplemental Declaration ¶ 19].

41.     Bankruptcy courts regularly acknowledge that the dissipation of a foreign debtor's assets to the detriment of its foreign insolvency proceeding constitutes irreparable harm.  *See, e.g.*, *In re Caldas*, 274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) (quoting *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("With respect to irreparable injury, we note that there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").  The goal of commencing the Chapter 15 Case was to obtain assistance in this Court with respect to the Bahamian Liquidation.  Unless the requested relief is granted, the Debtor will face the immediate and irreparable harm of the inability to obtain information regarding the nature and extent of its assets, and the dissipation of said assets. This clear frustration of the purpose of the Bahamian Liquidation would disrupt the comprehensive

and efficient administration of the Debtor's estate to the detriment of the Debtor and its stakeholders. Accordingly, the need for the Joint Provisional Liquidators to be able to (i) efficiently discover and analyze the value of, and administer, the Debtor's assets for orderly administration of the estate; and (ii) prevent dissipation of the Debtor's assets justifies the granting of provisional relief prior to the entry of an order granting recognition of the Bahamian Liquidation as a foreign main proceeding in order to prevent irreparable harm. [Simms Supplemental Declaration ¶ 19].

42.     Further, absent the requested authority to obtain accurate information regarding the Debtor's assets and property within the United States against which the Debtor has claims, and the staying of execution against, and the suspension of the transfer of, those same assets, there is a real and substantial risk of attachment, execution, depletion and/or diversion of the finite assets of the estate, resulting in irreparable harm and severe frustration of the Bahamian Liquidation. [Simms Supplemental Declaration ¶ 17].

43.     Given that the bankruptcy cases of FTX Trading and the FTX Affiliates are pending in the United States, the relief requested herein is necessary to begin the process of determining the ownership of assets which the Debtor, FTX Trading and the FTX Affiliates may each claim an interest. This process will likely be time consuming and complex, and the outcome of both the Bahamian Liquidation and the proceedings in Delaware will depend, in part, on its outcome. [Simms Supplemental Declaration ¶ 20]. Accordingly, irreparable harm would befall the Debtor if it is unable to begin obtaining the necessary discovery immediately.

**C.    The Balance of Hardships Weighs in Favor of the Debtor.**

44.     The Joint Provisional Liquidators submit that the irreparable harm to the Debtor in the absence of provisional relief significantly outweighs any harm to the parties which may be affected by the relief requested herein. Section 1522(a) authorizes courts to grant relief under

17

sections 1519 and 1521 where, as here, "the interest of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The Bankruptcy Code does not define "sufficiently protected" and courts "have great leeway to determine what that is." *In re Hanjin Shipping Co., Ltd.*, No. 16-27041 (JKS), 2016 WL 6679487, at \*5 (Bankr. D.N.J. Sept. 20, 2016). In general, courts will determine sufficient protection by balancing the respective parties' competing interests. *See CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief."). The legislative history of section 1522 provides that this requirement was meant to prevent "the foreign proceeding [from] *seriously and unjustifiably* injuring United States creditors." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005) (emphasis added).

45.     In this case, creditors in the United States will not be seriously and unjustifiably harmed. The requested relief would only (i) authorize the Joint Provisional Liquidators to administer and realize the Debtor's assets which are located in the United States; (ii) prevent the transfer or execution of said assets; and (iii) allow the Joint Provisional Liquidators to obtain discovery regarding, among other things, the scope and extent of those assets. Granting the relief requested herein will benefit the Debtor and its stakeholders by preserving the Debtor's assets and enabling the Joint Provisional Liquidators to carry out their duties with respect to investigating and realizing the Debtor's assets with the ultimate aim of equitable distribution in the Bahamian Liquidation pending this Court's determination of whether the Bahamian Liquidation should be recognized as a foreign main proceeding. Indeed, the Joint Provisional Liquidators are requesting only that this Court grant the preliminary relief from the date of the hearing on the Motion to the date of the hearing on the Petition in order to enable the Joint Provisional Liquidators to move

18

swiftly to protect and preserve the Debtor's assets.  Moreover, any party that believes it has been harmed by the provisional relief is not without recourse, but may file a motion with this Court seeking relief therefrom.  *See* 11 U.S.C. § 1522(c).

46.     The balance of harms weighs firmly in favor of granting the requested provisional relief, which will benefit all stakeholders by preserving the value of Debtor's assets.

**D.     Granting the Preliminary Relief Would Be in the Public Interest.**

47.     Granting the requested provisional relief would be in the public interest because it would in fact effectuate the public policy underpinnings of Chapter 15, among which are: (i) to foster fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor; (ii) to protect and maximize the value of the debtor's assets; (iii) to facilitate the rescue of financially troubled businesses, thereby protecting investment and preserving employment; and (iv) to promote cooperation between the courts and court-appointed administrators in the United States with those in competent foreign jurisdictions involved in cross-border insolvency cases.  *See* 11 U.S.C. §§ 1501(a), 1525.  As set forth above, the Joint Provisional Liquidators are seeking to examine witnesses and obtain documents and information regarding the Debtor's assets in the United States, and to prevent dissipation of said assets.  The Joint Provisional Liquidators seek this relief in order to carry out their duties in the Bahamian Liquidation and to efficiently administer the Debtor's estate for the benefit of all of the Debtor's stakeholders.  For these reasons, the public interest weighs in favor of granting an injunction.

48.     For the reasons set forth herein, the Joint Provisional Liquidators respectfully request that, pending the hearing on the Petition, the Proposed Order be approved in all respects and that the terms and provisions of the Proposed Order be implemented.

### REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)

49.     It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities in support of this Motion are contained herein.

### NOTICE

50.     Notice of this Motion has been served via electronic mail to the extent email addresses are available and otherwise by overnight courier, or by hand delivery upon: (a) the United States Trustee; (b) the Debtor and all persons or bodies authorized to administer foreign proceedings of the Debtor; and (c) those persons who have requested notice in this case pursuant to Bankruptcy Rule 2002.  In light of the issues involved and the interim nature of the relief sought herein, the Joint Provisional Liquidators believe that such notice is appropriate under the circumstances.

### NO PRIOR REQUEST

51.     No previous request for the relief requested herein has been made to this or any other court.

#180485918_v5

WHEREFORE, the Joint Provisional Liquidators respectfully request that this Court enter

the Proposed Order, substantially in the form of Exhibit A hereto, granting the relief requested

herein and such other and further relief as may be just and proper.


Dated: November 16, 2022
      New York, New York          HOLLAND & KNIGHT LLP


                         /s/ Warren E. Gluck
                         Warren E. Gluck, Esq.
                         Marie E. Larsen, Esq.
                         David W. Wirt (*Pro Hac Vice* Pending)
                         Jessica Magee (*Pro Hac Vice* Pending)
                         Shardul Desai (*Pro Hac Vice* Pending)
                         HOLLAND & KNIGHT LLP
                         31 W. 52nd Street
                         New York, NY 10019
                         Telephone:  212-513-3200
                         Fax: 212-385-9010
                         Warren.Gluck@hklaw.com
                         Marie.Larsen@hklaw.com
                         David.Wirt@hklaw.com
                         Jessica.Magee@hklaw.com
                         Shardul.Desai@hklaw.com

                         *Counsel for the Joint Provisional Liquidators of FTX*
                         *Digital Markets Ltd. (in Provisional Liquidation)*